Voorhees v. Voorhees.

CHARLES C. VOORHEES

v.

The executors of JOHN F. VOORHEES, deceased, et al.

1. The effect of the abrogation of a decree of divorce, when it is abrogated for fraud in its procurement, is to put the parties back in their matrimonial relations just where they were before the decree was pronounced.

2. The two essentials of a valid marriage are capacity and consent.

3. Marriage is a civil contract, and no ceremonial is indispensably requisite to its creation.

4. Cohabitation and reputation will, under some circumstances, justify a presumption of marriage, but they do not constitute marriage.

5. Where an actual marriage is shown, whether legal or illegal, the subsequent cohabitation of the parties and their reputation as husband and wife must necessarily be understood as having had their origin in such marriage, and cannot be treated as presumptive evidence of a second marriage at a later date.

On final hearing on bill, answer and proofs.

*Mr. H. E. Richards,* for the complainant.

*Mr. T. D. Hodges,* for the defendants, Gardner T. Voorhees and Margaret L. Voorhees.

VAN FLEET, V. C.

The complainant is the only child of Abraham Voorhees and Camilla C., his wife. His parents were married at Madison, in this state, on the 5th of January, 1860. He was born in October, 1861. His father died in February, 1882. His mother is still living. He brings this suit to recover one-sixth of the residuary estate of John F. Voorhees, deceased. John F. Voorhees was the father of Abraham Voorhees, and the grandfather of the complainant. He died testate, in November, 1867. His will disposes of his residuary estate as follows:

"All the rest and residue of my estate I give equally to all my children who may be living when the same is ascertained, the children of any who may have died receiving such share as their parent would have received if living."

The complainant claims the right to stand in the place of his father, and to take all that his father would be entitled to if living. His right in this respect is disputed. It is claimed that two other persons have the same right that he has. These persons are Gardner T. Voorhees and Margaret L. Voorhees. They claim to be children of Abraham Voorhees, and, as such, they insist that they are entitled to the same share of John F. Voorhees's residuary estate that the complainant is. The only question to be decided is, whether their claim is valid or not. The dispute in the case grows out of the following state of facts : On the 15th day of February, 1867, Abraham Voorhees brought a suit for divorce against his wife, Camilla, in the superior court of Connecticut. He represented to the court in which he brought his action, that his wife resided in the city of New York, and notice of the pendency of his suit was sent addressed to her there. He knew that she resided at Madison, in this state, and that notice sent to her at New York would not reach her. She did not receive notice of his suit. A decree of divorce was pronounced in his favor in March, 1867. On the 3d day of September, 1867, he married another woman in the State of Massachusetts. This woman knew that he had had a previous wife. She was at his father's house in the summer, 1866, and there learned that he had a wife, and that he and his wife were living in a state of separation. Camilla, the first wife, learned, in November, 1867, for the first time, that her husband had brought a suit against her which had resulted in a decree divorcing them. On the 4th of December following, she applied for the vacation of the decree of divorce, on the ground that it had been obtained by fraud. Her husband appeared and resisted her application, but the court, in December, 1868, after hearing the proofs and arguments of the parties, vacated the decree and granted a new trial. The decree was annulled because it had been procured by fraud. Camilla then answered, and also filed a cross-bill, praying that she might be divorced from her husband for his fault.

These cross-suits were subsequently tried, and resulted in a judgment rejecting the prayer of the husband for a divorce, and granting that of his wife. Gardner T. Voorhees and Margaret L. Voorhees are the offspring of the second marriage. Gardner was born on the 6th day of July, 1869, and Margaret on the 14th day of December, 1872.

The effect of the abrogation of the decree of divorce was to put Abraham and Camilla back in their matrimonial relations just where they stood before that decree was pronounced. After that decree was vacated, they stood in precisely the same matrimonial relation to each other as though no such decree had ever been made. She was his wife and he was her husband. The matrimonial bond which united them was just as perfect as it would have been if no attempt had ever been made to break it. The marriage, therefore, which Abraham attempted to contract in September, 1867, was a nullity, and his subsequent cohabitation with the other woman was just as meretricious, as a matter of law, as it would have been if they had consorted together without going through the form of a marriage. The two essentials of a valid marriage are capacity and consent. Abraham, when he attempted to contract a second marriage, was already the husband of one wife, and so could not, for want of capacity, become the husband of another woman. This was not disputed on the argument. But it was insisted that, inasmuch as it appeared by the proofs that Abraham and the woman whom he attempted to marry in 1867 lived together as husband and wife, and held themselves out to their friends and acquaintances as standing in that relation to each other, for several years after Camilla had procured a divorce, it is the duty of the court to presume that Abraham and the other woman made a contract of marriage subsequent to the divorce. There can be no doubt that cohabitation and reputation will, under some circumstances, justify a presumption of marriage. They do not constitute marriage, but may, in a case where no actual marriage, legal or illegal, is shown, and where nothing appears in the conduct of the parties to indicate that their relations were illicit, rather than matrimonial, justify the court in presuming that the parties

·originally came together under mutual promises to take each other for husband and wife during their joint lives. Marriage is a civil contract, and no ceremonial is indispensably requisite to its creation. A contract of marriage made *per verba de præ-senti* amounts to an actual marriage, and is valid. *O'Gara* v. *Eisenlohr, 38 N. Y. 296, 298.* But the law never indulges in presumptions contrary to what the fact is shown to be. In this case, the proofs make it very clear that no marriage, of any kind, was contracted by Abraham with the other woman after he was divorced from Camilla, on Camilla's application. This other woman was the only witness called to give evidence of the cohabitation and reputation on which the court is asked to base the presumption of marriage. She testified that, from the time of the marriage in 1867 up until the summer of 1874, Abraham and she lived together as husband and wife, and that he, during the whole of this period, introduced and held her out, on all occasions, to his friends and acquaintances as his wife, and that she, in like manner, always recognized and held him out as her husband, but that in the summer of 1874, in consequence of his unkind treatment and failure to support, she separated herself from him, and never afterwards lived with him. She also testified that no second marriage ceremony was performed. She did not pretend that a second marriage, of any kind, had been con-tracted by her with Abraham. Indeed, she swore to a fact which renders it perfectly certain that no second marriage was ·contracted, and that is, that up to 1885, more than two years after Abraham's death, she did not know, and had never heard, that the decree of divorce procured by him had been vacated on Camilla's application. Without such knowledge there was neither motive nor reason why she should desire or consent to a second marriage. Her evidence, in my judgment, establishes, beyond all doubt, the fact that no second marriage was contracted.

This being so, it is not possible to look upon the cohabitation ·of the parties, and the reputation which they acquired as holding the relation of husband and wife to each other, as presumptive evidence of a marriage contracted by them after Abraham acquired capacity to contract a second marriage, but they must

be regarded, as they are in fact, simply as consequences naturally resulting from the illegal connection formed in September, 1867. This case, in its essential features, is substantially like that of *Cartwright* v. *McGown*, *121 Ill. 388*. That case may very properly be regarded as the prototype of this. There a man by the name of Lewis married a woman by the name of James, in Kentucky, in 1841, and afterwards lived with her for about a year, and then abandoned her and went to Illinois. In 1843 Lewis married another woman in Illinois, and lived with her, as his wife, from the time of their marriage until his death, in 1868. He had several children by her, only one of whom, however, survived her. His Kentucky wife obtained a divorce in 1846. There was no issue of his marriage with her living when he died. He died intestate, seized of land in Illinois. The land was claimed by both his child and his brothers and sisters. It was awarded to his brothers and sisters, on the ground that the child was illegitimate. It was attempted, in that case, as it was in this, to induce the court to presume, from the cohabitation and reputation of the parents of the child, that they had contracted a valid marriage, although it appeared there, as it does here, that such cohabitation and reputation had its origin in an illegal marriage. The court, on this point, say: "It must be borne in mind that cohabitation and repute do not constitute a marriage, but are only evidence tending to raise a presumption of marriage, of more or less strength, according to the circumstances of the case, and that the cohabitation must not be meretricious, but matrimonial, in order to give rise to this presumption. Where a marriage in fact is shown by direct evidence, as in this case, there is no necessity for presuming its existence. Presumption must yield to the superior force of direct and positive proof." Then, after stating that the parties had attempted to unite themselves in marriage by going through a ceremony, the court adds: "Their cohabitation thereafter, and reputation as to being married, might very naturally and properly be referred to the fact of this apparent marriage, there being nothing to indicate to their acquaintances and neighbors that it was void. If no actual marriage ceremony had been shown, then the cohabitation and repute

proved might be referred to some supposed informal, common-- law marriage." Substantially similar views were expressed by the court of appeals of New York, in *O'Gara* v. *Eisenlohr, supra*, and, as I understand the charge of Chief Justice Ewing to the jury, in *Pearson* v. *Howey, 6 Halst. 12*, he was of the opinion that where an actual marriage is shown, even if it was illegal, the subsequent cohabitation and reputation of the parties must be regarded as having their origin in such marriage, and will not justify a presumption that the parties contracted a subsequent marriage at a later date.

My conclusion is, that the defendants are not entitled to any part of the fund in controversy, but that the complainant is entitled to the whole.