Costill *v.* Hill.

---

### SMITH COSTILL

#### *v.*

### ANNIE E. HILL.

Where a man and woman constantly live together, ostensibly as man and wife, claiming to be such, and so demeaning themselves towards each other, and are received into society, and are treated by their friends and relations as having and being entitled to that status, the law, in favor of morality and decency, will presume that they have been legally married. Such cohabitation and repute are said to be matrimonial in distinction from that occasional, hidden and limited cohabitation which marks the meretricious relation. It is always a question whether the cohabitation proved is of the character which will raise the presumption and make *prima facie* proof of marriage. At best, it can do no more, for the presumption may be rebutted.

On appeal from a decree which distributes the estate of Capitol S. Hill, made by the Camden county orphans court.

*Mr. Jonathan W. Acton* and *Mr. Samuel E. Perry*, for the appellant.

*Mr. John W. Wescott*, for the respondent.

THE ORDINARY.

Capitol S. Hill died intestate on the 27th of May, 1894, leaving him surviving, as his next of kin, three brothers, Smith Costill, of Camden, who is the appellant, and John and Caleb Costill, of Salem county. His father's name was Costill, and the name he took from his parents was Hill Costill. From time to time he assumed different names. For several years immediately preceding his death he was known as Capitol S. Hill. He was drowned by falling from a boat which he owned, and on which he lived with the respondent.

The decree appealed from recognizes the respondent as the widow of Hill, and after reciting that the costs of the litigation in the orphans court concerning the distribution of his estate, which were taxed at about $733, had been paid pursuant to the order and direction of that court, and that the remaining estate was less than $2,000, proceeded to distribute it, one-half to the respondent and one-sixth to each of the decedent's brothers.

The petition of appeal asserts that the decree allows a counsel fee of $300 to the respondent's counsel. I presume that fee was allowed by some previous order of the orphans court and was directed to be taxed with the costs in the case. The decree appealed from recites merely the fact that payment of the costs has been made, but does not itself order the payment of any counsel fees or costs.

The main contention in the case, and the only question to be now decided, is as to the *status* of the respondent as the widow of Capitol S. Hill.

The appellant claims, first, that the respondent was never married to Hill, and second, that if married, the marriage was a

nullity because at the time of it the respondent was the lawful wife of another man.

In her effort to prove her *status* as the widow of the decedent, the respondent was herself sworn as a witness, and testified that on the night of the 8th of August, 1889, while she lived in the house of the decedent at 711 Mount Vernon street, in Camden, in the capacity of his housekeeper, the decedent brought to the house a man whom he said was a Methodist minister, who, without witnesses, married them; also, that this man gave them a marriage certificate, which they framed and kept hanging upon the wall in their several places of abode until Hill's death. She does not know what has now become of that certificate, except that it disappeared from the boat where she and the decedent had lived, after his death, and while she was incarcerated in prison upon some authority and for some reason which she professes to be and to have been unable to comprehend, and which has not been explained in the case. The respondent is uncertain and vague in her attempts to describe the minister, and although she had the marriage certificate for about six years, fails to remember his name. She has never seen him since the marriage.

Coupled with this testimony is proof which shows that about the date of the alleged marriage and thereafter, the decedent declared the respondent to be his wife and introduced her as such; that in September, 1892, as his wife, she joined him in the conveyance of their residence at 711 Mount Vernon street, to one Joseph Loeb, executing and acknowledging the deed in the capacity of wife; that in 1892 she and Hill moved to a house on Mechanic street, in Camden, and there resided for two years, where they were known and recognized by the neighbors as husband and wife; that while at that place Hill repeatedly introduced her and talked about her to the neighbors, as his wife; that a witness saw a marriage certificate hanging upon the wall in the Mechanic street house, and heard Hill refer to it as the respondent's; that as man and wife they, in their house at Mechanic street, entertained their neighbors socially; that upon one occasion, in a police court, the decedent complained of children annoying the respondent, styling her his wife; that in

October, 1893, another sale of real estate was made to a man named Jung, to whom, in 1891, Hill had introduced the respondent as his wife, and that Jung's lawyer was instructed by Hill to prepare the deed making the respondent a party as his wife. The lawyer testifies when the time came to execute the deed, the respondent refused to sign it unless she should personally receive $50 out of the $1,700 purchase-money that was to be paid, and that Hill demurred to giving her that sum, and in her absence tried to persuade the lawyer to strike her name out as a party to the deed, alleging that she was not his wife, but that ultimately peace was restored and she joined in the execution of the document. It is shown, also, that shortly after the sale last mentioned, Hill determined to build a boat upon which he and the respondent could live, and for that purpose employed a boat builder, who called at his house to confer about the plans and contract for the vessel, where he was introduced by Hill to the respondent as Hill's wife, and where subsequently he visited several times and found her, on every occasion, to be recognized by Hill as holding the relation of wife to him; that in the spring of 1894, the respondent and Hill moved on the boat before the builder had finished his work, and Hill then expressed to the builder his gratification at finding his marriage certificate, which had been lost; that subsequently Hill pointed out to another witness the certificate hanging in the boat, and the witness looked at it and saw the names of Hill and the respondent in it.

On the other side, the appellant and his brother John testified that Hill told them that he was not married, and a young man who works for the appellant testified to the same effect. The appellant's wife, being called to speak of an occurrence in the year 1892 or 1893, said, first, that the respondent was then in the habit of calling at the appellant's house, sometimes with and sometimes without Hill, and was known as Hill's wife, but afterwards, in the same examination, contradicting her former assertion, persisted in the position that the respondent was not Hill's wife, but his housekeeper. The wife of one of the brothers, living in Salem county, testified that she called at Hill's house, on Mount Vernon street, immediately after the respond-

ent came there, and that Hill then said to her that the respondent was his housekeeper. Such a statement would not be inconsistent with the respondent's testimony, for it is remembered that the respondent does not claim to have married Hill until after she had been his housekeeper nearly a year.

It is noticed that all this contradictory testimony comes from parties in interest in this controversy and their dependents, and that it is subject to the criticism which is properly accorded to interested testimony.

With few exceptions, the witnesses appear to belong to a low and ignorant class of people, and I have doubt in several instances as to the credit to which they may be entitled. I believe that the judges who heard them testify and noted their intelligence and bearing upon the witness-stand are much better able to pass upon their credibility than I am. My inclination is to doubt the story of the respondent because it is meagre and vague in details, verging in some respects upon that which appears to be improbable, but at the same time I feel that those conditions may be attributable to the stupidity or ignorance of the witness, for when her testimony is regarded in the light of the subsequent acknowledgments and recognitions of a marital relation between her and Hill by both Hill and herself, which cannot be doubted, I conclude that when it is taken with such subsequent conduct, there is sufficient in the case to raise the presumption that she and Hill were man and wife, a presumption that has not been rebutted by the testimony which conflicts with it. As has been intimated, the last-mentioned testimony comes almost entirely from interested sources and relates only to declarations by Hill which are very limited in number and may have been made to answer some ulterior purpose, such as was obviously the case in his denial of marriage at the time of making the deed to Jung, where, if his insistence had been acquiesced in by Jung's lawyer, it might have served to save him a few dollars.

It is plain that the cohabitation shown was with matrimonial habit and repute, constant and free from clandestinity, known, as the proofs indicate, to the relatives of both parties. It is

true the wife of the appellant, after first testifying that the respondent was recognized in the brother's family as Hill's wife, insisted that the relation was not wife but housekeeper, yet she said enough in her testimony to satisfy me that social relations were sustained between the two families which could hardly have existed if a meretricious relation had been all the while known to exist.

The general rule, under proofs of the kind considered, is that where a man and woman constantly live together, ostensibly as man and wife, claiming to be such, and so demeaning themselves towards each other, and are received into society and are treated by their friends and relations as having and being entitled to that *status*, the law, in favor of morality and decency, will presume that they have been legally married. Such cohabitation and repute are said to be matrimonial, in distinction from that occasional, hidden and limited cohabitation which marks the meretricious relation. It is always a question whether the cohabitation proved is of the character which will raise the presumption and make *prima facie* proof of marriage. At best it can do no more, for the presumption may be rebutted. *Wallace's Case, 4 Dick. Ch. Rep. 530, 534.*

The second ground of attack upon the decree is that if the proofs offered by the respondent shall be held to be sufficient to establish, by presumption or otherwise, the existence of the marriage relation, their effect is nullified by proof that during all her cohabitation with Hill, the respondent had another husband alive.

If the proofs sustain this proposition, it is undoubtedly sound, but I think it is clear that they do not sustain it. Upon this point it is established that the respondent had a child by a man supposed to be a Mexican, called French, who was a cook in one of the Camden hotels, in the year 1887, and that she lived with him, in the house of her father and mother, for a year or more, during which time, for the sake of maintaining the semblance of respectability, she and her family and French gave it out that they were married. After a year they separated, and since then have not been together. She has retained the child,

and at times, when its paternity has been questioned, has pretended that she was married to its father. There is no proof of the marriage with French, except in the declarations alluded to and the limited repute consequent upon them. On the other hand, the testimony of the respondent and two of her brothers, corroborated by the complete termination of all relations with French, show that the previous relation was purely meretricious. The respondent's parents are dead.

I have not failed to consider the influence which the cohabitation with French should have upon the proof of marriage with Hill. It exhibits not only a case of moral depravity, but also an ability in the respondent to create deceptive appearances to cover shame, and suggests the question whether the life with Hill may not have been similar to the life with French. That question may justly arouse strong suspicion, but, in face of the policy of the law, which favors morality and decency, and charitably contemplates the possibility of a seduced woman afterwards leading a better life, the suspicion fails to rise to the dignity of the proof which is necessary to rebut the law's presumption.

I will affirm the decree of the orphans court, with costs. No counsel fees will be allowed.