AMELIA R. SPARKS

*v.*

CHARLES S. ROSS et al.

[Submitted May 9th, 1911. Decided July 5th, 1911.]

1. In an action to quiet title in which the verdict in favor of the defendant (plaintiff in the issue at law) depended upon the sufficiency of the evidence to overcome the presumption of validity accompanying a decedent's third marriage—*Held*, that a verdict for the plaintiff would be set aside as against the weight of the evidence.

2. A presumption of divorce from a prior marriage arises from a subsequent marriage.

On bill, &c., to quiet title.

*Messrs. French & Richards,* for the complainant.

*Mr. Timothy J. Middleton* and *Mr. John J. Crandall,* for the defendants.

LEAMING, V. C.

A fourth trial of an issue at law in this case having resulted in a verdict for the plaintiff in the issue, a motion is now made in this court to set aside that verdict.

Since a former trial, a review of which is reported in *75 N. J. Eq. (5 Buch.) 550,* two new elements have been added in defence of the claim asserted by the plaintiffs in the issue at law. Evidence has been introduced showing that although Edmund B.

Ross resided in this state continuously from the date of his marriage to Maria Moose to the date of his marriage to Mary Cavanaugh, a search of the records of the court of chancery of this state covering that period discloses no decree of divorce from the Ross-Moose marriage. Evidence has also been introduced showing that on June 5th, 1864, one year and a half after the Ross-Moose marriage, Ross married one Anna Todd, and that she was alive at the time of the Ross-Cavanaugh marriage, and that a search of the records of the court of chancery during the period stated discloses no decree of divorce from the Ross-Todd marriage.

The question now presented is whether the presumption of validity accompanying the last marriage has been overcome by the evidence which has been introduced to overthrow that presumption.

There was, undoubtedly, a valid marriage between Ross and Maria Moose December 4th, 1862, provided both were then free from disability. There was, undoubtedly, a valid marriage between Ross and Anna Todd June 5th, 1864, provided both were then free from disability. There was, undoubtedly, a valid marriage between Ross and Mary Cavanaugh October 24th, 1873, provided both were then free from disability. As both the Moose woman and the Todd woman were alive at the date of the third marriage—the Moose woman being still alive—it necessarily follows that the third marriage can be sustained only upon the assumption that these prior marriages were either void for want of ability of the parties to contract, or, if valid, were dissolved by a decree of divorce prior to the date of the third marriage.

Touching the assumption that the Ross-Moose marriage was void for want of capacity of the parties, it was pointed out at the review of the former trial above referred to that although the evidence was ample that Maria Moose was able to contract marriage with Ross, no testimony of the capacity of Ross was present, except the statement of his sister to the effect that she did not know of his having married prior to that marriage, and in consequence it was held that the presumption of innocence accompanying the last marriage of Ross, and the fact that Maria made no claim for support and remarried without a divorce, might be sufficient to justify a conclusion of incapacity upon the part of

Ross at the date of the Ross-Moose marriage. At the last trial, however, in addition to the former testimony referred to, another sister of Ross testified with positiveness that he had not been married prior to his marriage to Maria, and no testimony was offered to the contrary. The fact that Ross had married Anna Todd prior to the time Maria remarried was also established. In view of this added testimony, it will be observed that the evidence of the capacity of Ross to marry Maria Moose was materially strengthened, and at the same time the force of the presumption of innocence arising from the last marriage of Ross was materially weakened. When the third marriage of Ross is considered by itself the presumption of innocence and legitimacy necessarily follow the acts of marriage, cohabitation and raising children; but such presumptive innocence cannot be logically used with force to establish the fact that two prior marriages of the same man, each followed by cohabitation and children, were void by reason of his incapacity to marry. The presumption of dissolution of the prior marriages may remain, but the presumption of innocence which should accompany the last marriage is almost, if not wholly, lost by the assumed unlawful matrimonial prior conduct of the same party. But should the presumption of validity of the third marriage, when considered in connection with the several circumstances of the case, be thought sufficient to justify the assumption of a disability on the part of Ross at the time of his marriage to Maria Moose and thus render that marriage void, it follows, in view of the evidence now present touching the Ross-Todd marriage, that to justify the verdict upon the theory of incapacity of Ross the further assumption must also be indulged that the presumed disability, or some new disability, existed at the time of the Ross-Todd marriage, and in turn rendered that marriage void; and that all disabilities were removed prior to the date of the third marriage. This series of complex and remote possibilities cannot, in my judgment, be properly ascertained as facts from the evidence here presented. I am convinced that the verdict cannot be sustained upon any theory of incapacity upon the part of Ross or Maria Moose.

The only remaining theory on which the verdict can be sustained is that the Ross-Moose marriage, if valid, was dissolved

by divorce prior to the Ross-Cavanaugh marriage, and if valid and dissolved by divorce prior to the Ross-Todd marriage, that that marriage, if valid, was also dissolved by divorce prior to the Ross-Cavanaugh marriage. The evidence now discloses that no divorce from either marriage has been decreed in this state. Evidence has also been introduced to the effect that Ross resided in this state continuously from a time prior to the Ross-Moose marriage until after his marriage to Cavanaugh. In the absence of some evidence indicating that it is not true that Ross resided in this state during the period named or that he may have acquired a residence in some other state and there procured a divorce, I am unable to find any justification for a verdict based upon the assumption of a divorce. While a presumption of divorce from a prior marriage arises from a subsequent marriage, that presumption is necessarily dispelled when it affirmatively appears that no divorce has, in fact, been decreed in the only jurisdiction in which a divorce could properly be granted.

Another circumstance, not heretofore referred to in the several reports of this troublesome litigation, should, I think, be here noted. The claim of the plaintiffs in the issue at law is under the provisions of the will of Samuel Ross, the father of Edmund B. Ross. The provisions of that will touching the property here in question direct the payment of the income of the property to Edmund B. Ross during his lifetime, and direct that at his death a specified amount shall be paid to the son of Edmund B. Ross, "son of his wife, formerly Maria Moose, if then living," and direct that the residue shall be "equally divided among any children that he (Edmund B. Ross) may hereafter have borne to him in lawful wedlock." At the time this will was executed, July 15th, 1871, Edmund B. Ross and his wife, formerly Maria Moose, had separated and Edmund and Anna Todd had gone through the form of marriage, and has then living two children as the issue of that alliance. These circumstances are not without significance, in that by the terms of the will Maria is defined as Edmund's wife, and provision is made for the issue of that marriage, and the issue of Edmund and Anna then living are excluded, and future issue of Edmund are provided for only in case such issue shall be legitimate.

In my judgment, the verdict is so clearly against the weight of the evidence that it cannot be properly used to control the final decree of this court. I am obliged to advise an order setting aside the verdict.