35 N.J. Super. 575 (1955)
114 A.2d 577
MARY SIMMONS, PLAINTIFF-APPELLANT,
v.
ARNETT SIMMONS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1955.
Decided June 2, 1955.
*576 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Robert S. Hartgrove argued the cause for appellant.
Mr. William J. O'Hagan argued the cause for respondent (Messrs. Stout and O'Hagan, attorneys).
*577 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a judgment of the Chancery Division dismissing with prejudice her action for separate maintenance because the proofs failed to establish that she ever entered into a ceremonial marriage with defendant, but rather showed she had previously contracted such a marriage with one Thompson so that she is not now and never was defendant's wife. The appendix is limited to a record of the pleadings; the testimony is not reproduced. However, in disposing of plaintiff's earlier application for alimony pendente lite, counsel fees, printing costs, etc., this court permitted the parties to submit a single copy of the transcript with their briefs.
The original complaint alleged that plaintiff was ceremonially married to defendant in Fort Pierce, Florida, on March 25, 1928; it set out a series of acts of extreme cruelty, charged abandonment and refusal and neglect to support, and demanded judgment granting support and maintenance. Defendant denied he had ever been married to plaintiff or that they had lived together, and alleged she had told him she was married to Thompson and had been abandoned by him. This answer was later amended to state that when defendant first met plaintiff she told him her name was Mary Garrett and that she was the wife of one Cleveland Garrett, whom she had deserted.
In the affidavit attached to her motion for alimony pendente lite plaintiff averred that she had ceremonially married Thompson in Monticello, Florida, early in 1915; that he had deserted her in the latter part of 1916 in Florida; that she had never again seen nor heard from him despite her efforts (including advertisements in the local Florida newspapers) and those of his parents and relatives to locate him; that she had explained all this to defendant prior to their marriage, and both of them had believed Thompson was dead.
Thereafter plaintiff filed an amended complaint for separate maintenance in two counts. The first was based on the ceremonial marriage to defendant, as set forth above. The *578 second was based on a common-law marriage; it alleged that at various times before March 25, 1928, at Fort Pierce, Florida, defendant offered to marry plaintiff, she had accepted his offer, and they had then mutually agreed to enter into a marital relationship; that on March 25, 1928, in furtherance of their mutual agreement, the parties went through a ceremonial marriage at Fort Pierce; that following their mutual agreement and the ceremonial marriage the parties had lived together as husband and wife, and plaintiff was held out by defendant as his wife and was reputed to be his wife in various communities in Florida; and that in 1929 the parties came to live in New Jersey where they continued to cohabit as man and wife and were known and reputed as such in the several communities in which they resided. Two children were born of the marriage, both now dead.
Answering the amended complaint defendant denied both the ceremonial and the common-law marriages, stated there was no public or other record of the alleged ceremonial marriage because none had ever taken place, and by way of separate defense to both counts claimed (as before) that when he first met plaintiff she told him her name was Mary Garrett and that she was the wife of Cleveland Garrett, whom she had deserted and who was then living.
The hearing took three days and covers more than 500 pages of transcript. After considering the testimony and the arguments and briefs of counsel the trial judge filed an opinion in which he held that the ceremonial marriage had not been proved. In reaching that conclusion he stressed the fact that no marriage certificate or other record had been produced; rather, defendant's investigation indicated there was no such record. As for the alternate claim that there had been a common-law marriage, the court held that plaintiff had to show there was no impediment to her entering into such relation before she could establish it. Having testified that she had once been ceremonially married to Thompson, she was under a disability to enter into any common-law arrangement with defendant. The court considered the prior marriage to Thompson as dispositive of the case and held *579 that plaintiff was never the wife of defendant. The judgment of dismissal followed.
A ceremonial marriage is usually proved by producing the marriage certificate or a public record of the marriage. However, there are other ways of establishing such a marriage, as by those who attended the ceremony or, perhaps less satisfactorily, by witnesses to whom the parties spoke soon after the event and who confirmed the fact that a ceremony had actually taken place. It would appear that there was some testimony to the latter effect. Since the trial judge stressed the lack of any record of a ceremonial marriage, it is not clear whether he considered and passed on the question of whether the parties had in fact participated in a marriage ceremony, established by proofs other than the public record. We are therefore without the benefit of a definite finding by the trial court as to whether a ceremonial marriage had been proved in that fashion.
Although much testimony was taken concerning the parties living together as husband and wife, and their holding each other out as such in social relations and business affairs, there is no finding on the question of whether a common-law marriage was established, the ceremonial marriage not having been proved by record or otherwise. Common-law marriages were and are valid in Florida. Tegenborg v. Tegenborg, 26 N.J. Super. 467 (App. Div. 1953), explained in Danes v. Smith, 30 N.J. Super. 292, 299-300 (App. Div. 1954). They were valid in New Jersey when the parties moved here in 1929 and continued to be valid until the act of 1939. L. 1939, c. 227, N.J.S.A. 37:1-10.
The two essentials of a common-law marriage are capacity in the parties and their mutual consent presently to become man and wife. Goldbeck v. Goldbeck, 18 N.J. Eq. 42 (Ch. 1866); State v. Bradley, 122 N.J.L. 575 (Sup. Ct. 1939). The court in Jackson v. Jackson, 94 N.J. Eq. 233 (E. & A. 1922), held that
"* * * Where there is no ceremonial marriage there must be an agreement entered into between the man and the woman, in words of the present tense, to live together as husband and wife. *580 There are probably but few instances of mutual consent, by which each party in precise or unambiguous terms takes the other as spouse; but no particular words are necessary to declare an intention to enter into a contract of marriage. If from what was said by the parties, aided by the circumstances surrounding their entering upon their relationship, it can be gathered that they proposed to enter into a contract thenceforth to live as husband and wife, it will be sufficient (Stevens v. Stevens, 56 N.J. Eq. 488; Bey v. Bey, 83 N.J. Eq. 239; Schaffer v. Krestovnikow, 88 N.J. Eq. 192; affirmed, 89 N.J. Eq. 549), and where it appears that such relationship is matrimonial, rather than illicit, cohabitation and reputation will justify the presumption that the parties came together under a mutual promise to live as husband and wife. Voorhees v. Voorhees, supra, 46 N.J. Eq. 411; Wallace's Case, 49 N.J. Eq. 530; Mullaney v. Mullaney, 65 N.J. Eq. 384." (94 N.J. Eq. at pages 236-237)
The occasion is rare indeed when there are witnesses to a common-law marriage which has been manifested by a present mutual consent to become husband and wife. Some other mode of proof becomes necessary in order to show that the parties at some time presently intended to enter into such a relation. The doctrine of habit and repute supplies such proof. Conkling v. Conkling, 117 N.J. Eq. 218 (E. & A. 1934); Proctor v. Lowe, 105 N.J. Eq. 536 (E. & A. 1930). Whether the conduct of competent parties evinces a matrimonial intent or, on the contrary, manifests an illicit relation, depends on many circumstances. Each case must hinge on its particular facts. In Costill v. Hill, 55 N.J. Eq. 479 (Prerog. 1897), the court said:
"The general rule, under proofs of the kind considered, is that where a man and wife constantly live together, ostensibly as man and wife, claiming to be such, and so demeaning themselves towards each other, and are received into society and are treated by their friends and relations as having and being entitled to that status, the law, in favor of morality and decency, will presume that they have been legally married. Such cohabitation and repute are said to be matrimonial, in distinction from that occasional, hidden and limited cohabitation which marks the meretricious relation. It is always a question whether the cohabitation proved is of the character which will raise the presumption and make prima facie proof of marriage. At best it can do no more, for the presumption may be rebutted. Wallace's Case, 4 Dick. Ch. Rep. 530, 534." (55 N.J. Eq., at page 484)
*581 Cohabitation with matrimonial habit or repute is evidence of a common-law marriage. Dunn v. O'Day, 18 N.J. Misc. 679, 681 (W.C.B. 1940). Prior to the enactment of the 1939 statute, cohabitation and reputation raised a presumption of a preceding common-law marriage, and the strength of the presumption was in direct ratio to the length of the cohabitation. Franzen v. Equitable Life Assurance Society, etc., 130 N.J.L. 457, 466 (Sup. Ct. 1943).
Should a ceremonial marriage between the parties in 1928 be established by other than record proof, or, in the alternative, should the testimony establish to the satisfaction of the trial court and in the manner required by our cases, that the parties entered into a common-law marriage, the question of plaintiff's ceremonial marriage to Thompson in 1915 requires consideration. We may presume the validity of the earlier marriage, but this presumption is transferred to the second marriage so as to require clear and convincing proof of the validity and continued existence of the first marriage if the presumption of the validity of the later marriage is to be overcome. Hoffmann v. Jinks, 134 N.J. Eq. 91 (E. & A. 1943); In re Brugnoli, 97 N.J. Eq. 349 (E. & A. 1925); Sparks v. Ross, 75 N.J. Eq. 550, 553 (E. & A. 1909) and 79 N.J. Eq. 99 (Ch. 1911), affirmed 79 N.J. Eq. 649 (E. & A. 1912); Schaffer v. Krestovnikow, 88 N.J. Eq. 192 (Ch. 1917) and 88 N.J. Eq. 523 (Ch. 1918), affirmed 89 N.J. Eq. 549 (E. & A. 1918). The presumption attending the second marriage would have no application were there proof that Thompson is alive and the first marriage subsisting. Friesner v. Symonds, 46 N.J. Eq. 521 (Prerog. 1890); Lindsay v. Lindsay, 42 N.J. Eq. 150 (Ch. 1886).
N.J.S. 3A:40-1 (formerly R.S. 3:42-1) provides that if a resident or non-resident of this State absents himself from the place of his last known residence for seven successive years and after diligent inquiry it cannot be ascertained that he was alive during that period or at any subsequent time, the presumption arises  should his existence come into question  that he is dead, unless it be proved he was alive within *582 the seven years or at any time thereafter. The statute comes to the aid of the second marriage, should such marriage (ceremonial or common-law) be established. As noted. Thompson disappeared in 1916; plaintiff was unable to discover his whereabouts; in 1928 she claims she married defendant. Thompson is presumed dead and the alleged marriage to defendant valid, absent rebutting proof of the continued life of Thompson.
It has been held that the presumption in favor of the validity of a second marriage is not overcome by proof merely that the spouse of the first marriage was living at a time less than seven years before the time of the second marriage. Keller v. Linsenmyer, 101 N.J. Eq. 664 (Ch. 1927); Michaels v. Michaels, 91 N.J. Eq. 408 (Ch. 1920); Vreeland v. Vreeland, 78 N.J. Eq. 256 (E. & A. 1911). A fortiori where more than seven years have passed. The presumption of the continuance of life fades gradually with the expiration of time until at the end of seven years of absence the presumption of death arises, N.J.S. 3A:40-1, and a second marriage contracted after the passage of the seven years is considered valid if there is no rebutting proof of the continued life of the absentee. Frank v. Frank's, Inc., 15 N.J. Super. 107 (Ch. Div. 1951), reversed on other grounds, 9 N.J. 218 (1952); In re DeBois, 7 N.J. Misc. 1029 (Ch. 1929).
If plaintiff's marriage to defendant is established as ceremonial in fact or as having a common-law character, the burden of proving the marriage invalid would be upon defendant who makes that claim. 35 Am. Jur., Marriage, § 206, p. 315; Tyll v. Keller, 94 N.J. Eq. 426, 429 (E. & A. 1923); cf. Foster v. Jarka Corp., 21 N.J. Misc. 47, 30 A.2d 47 (W.C.B. 1942); Hoyt v. Newbold, 45 N.J.L. 219 (Sup. Ct. 1883); Smith v. Smith's Executors, 5 N.J. Eq. 484 (Ch. 1846).
The legal principles hereinabove set out are well established but we do not find it possible to adjudicate the merits of the controversy because of the lack of factual findings on the two matters indicated: whether the testimony established to the satisfaction of the trial judge that there was a ceremonial *583 marriage in fact, though not one supported by record proof; or whether a common-law marriage had been established. We submit the legal principles which we conceive to be applicable, for the guidance of the trial court. Cf. Van Inwegen v. Van Inwegen, 4 N.J. 46, 50, 53 (1950). Accordingly, the judgment is reversed and the matter remanded so that the trial judge may have an opportunity to make the necessary factual findings and state his conclusions of law based thereon.