**Kenneth CRENSHAW, an infant by his guardian ad litem, Bessie Crenshaw, Anthony Crenshaw, an infant by his guardian ad litem, Bessie Crenshaw, and Mary Crenshaw, an infant by her guardian ad litem, Bessie Crenshaw, Plaintiffs,**

**v.**

**John W. GARDNER, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**Civ. A. No. 7–64.**

United States District Court
D. New Jersey,
Civil Division.
Nov. 3, 1967.

Sydney L. Seiler, Newark, N. J., for plaintiffs.

David M. Satz, Jr., U. S. Atty., Newark, N. J., by George J. Koelzer, Asst. U. S. Atty., for defendant.

## OPINION

COOLAHAN, District Judge.

 This is a civil action to review a final decision of the Secretary of Health, Education and Welfare by its Appeals Council of the Bureau of Hearings and Appeals, Social Security Administration, in respect to a claim for children's insurance benefits under the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). The court's review of the facts in the present case is limited to inquiry as to whether there was substantial evidence in the record to support a finding by the defendant Secretary of Health, Education and Welfare.

## I.

The facts in the instant case, as established by the parties before the Hearing Examiner below, appear to be as follows: Horace "Doc" Crenshaw, hereinafter referred to as the decedent, and Bessie Crenshaw, hereinafter referred to as the claimant, began living together in December of 1939, ostensibly as husband and wife, until the death of the decedent in 1960. Three children, Kenneth, Anthony T., and Mary, hereinafter referred to as the infant plaintiffs, were born to them. Decedent apparently acknowledged the children as his own and supported them and the claimant continuously until his death. Claimant had never been married prior to meeting the decedent, but decedent had been married to one Blanche Taylor, by whom he had four children. According to the record, decedent and his wife separated in 1935, but there is no evidence that this marriage was ever dissolved. Apparently, claimant did not learn of the decedent's

marriage until the birth of the first infant plaintiff.[1]

Decedent was a fully insured individual under the Social Security Act. He died on December 15, 1960 and was domiciled until death in Newark, New Jersey. Thereafter, on February 20, 1961, claimant filed an application on behalf of the three infant plaintiffs for children's insurance benefits on the earnings record of the decedent. This claim was denied. A hearing was then held before the Hearing Examiner of the Bureau of Hearings and Appeals where it was determined that the infant plaintiffs were entitled to the benefits claimed. Subsequently, the Appeals Council upon due notice to the claimant, decided to review the Hearing Examiner's decision on its own motion. It found that the infant plaintiffs were not the children of the decedent at the time of his death, as required by the Social Security Act, 42 U.S.C. § 416(h) (2) (A), and therefore reversed the decision of the Hearing Examiner. Having considered all of the claimant's arguments on this appeal, I affirm the action taken by the Appeals Council.

## II.

■■ Claimant in this action is proceeding pursuant to 42 U.S.C. § 402(d), which provides in part:

(1) Every child (as defined in section 416(e) of this title) of an individual * * * who dies a fully or currently insured individual, if such child * * *

(C) was dependent upon such individual * * *

(ii) if such individual has died, at the time of such death, * * *

shall be entitled to * * * a child's insurance benefit * * *.

(3) A child shall be deemed dependent upon his father * * * unless, at such time, such individual was not living with or contributing to the support of such child and * * *

(A) such child is neither the legitimate nor adopted child of such individual * * *.

It is the position of the claimant that since the infant plaintiffs were dependent upon the decedent as required by Section 402(d) (1) and (3) supra, they are entitled to child insurance benefits under the same section. The only problem with this argument, however, is that Section 402(d) refers to children as defined in Section 416(e) of the same title. This section provides that the term "child" means child or legally adopted child. Thus, to ascertain the definition of child under Section 402(d) of the Social Security Act, one must refer to Section 416(h) (2) (A), supplementing Section 416(e), which provides in part:

In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

It follows from Section 416(h) (2) (A) that the Secretary, in administering death benefits under the Social Security Act in the present case, must inquire as to the right of inheritance which the infant plaintiffs have from the decedent under New Jersey intestate personal

---

1. But see Tr. 16. Exhibit 6 contains a statement by the decedent to the effect that he told the claimant of his prior marriage about six weeks after they had met.

property law. Thus, to be entitled to a child's insurance benefit, the infant plaintiffs must not only satisfy the requirements of Section 402(d) (1) and (3), but in addition must come within the purview of Section 416(h) (2) (A). In order to decide whether the infant plaintiffs have a right to inherit from the decedent under the law of New Jersey, it becomes necessary to examine the nature of the relationship between the decedent and the claimant.

### III.

If the claimant and the decedent were validly married from 1939 until the decedent's death in 1960, then the infant plaintiffs are legitimate and are entitled to inherit from the decedent in New Jersey.

As between the claimant and the decedent, no ceremonial marriage, valid or invalid, ever took place. Claimant contends, however, that as between herself and the decedent a valid common law marriage existed between December, 1939 and December, 1960. By statute in New Jersey, common law marriages commencing after December, 1939 are not valid. See N.J.S. § 37:1–10, N.J.S.A. Common law marriages entered into before that date continue to be valid. Claimant relies on this latter proposition of law with respect to her alleged marriage to the decedent.

■■■■■ There are two prerequisites to a valid common law marriage in New Jersey. They are: 1) Capacity of the parties to enter such a relationship; and 2) Mutual Consent of the parties to become presently man and wife—i. e., there must be an agreement by both parties to intend to enter into a contract of marriage. See Jackson v. Jackson, 94 N.J. Eq. 233, 113 A. 495 (Ch.1922). With respect to the latter of these two requirements, it has been held that cohabitation with matrimonial habit or repute is evidence of a common law marriage, Dunn v. O'Day, 18 N.J.Misc. 679, 681, 16 A.2d 195 (1940). See also Costill v. Hill, 55

N.J.Eq. 479, 480, 40 A. 32, 33 (Ch.1897). Of course, if the claimant in the instant case knew of decedent's prior incapacity to enter into a valid common law marriage, she could not in any case have had the requisite intent to contract a valid common law marriage. See Winn v. Wiggins, 47 N.J.Super. 215, 135 A.2d 673, (Super.Ct.1957).

■■■■■ Assuming that the claimant and the decedent had the intent necessary to enter into a common law marriage, there is also the problem of whether they had the proper capacity to effect such a relationship. The Appeals Council determined from the record that the decedent never obtained a divorce from his first wife and therefore did not have the capacity to contract a valid common law marriage. Claimant contends that this determination is not supported by substantial evidence in the record. It is further insisted that the presumptions attaching to the validity of present marriages which would be applied in controversies in the courts of New Jersey should have also been applied by the Appeals Council below. Assuming that such presumptions are applicable in a federal administrative proceeding, I am of the opinion that the Appeals Council's finding of facts are supported by substantial evidence. With respect to the alleged common law marriage between the claimant and the decedent, the following has been held in New Jersey:

1. All marriages are presumed to be valid until proven otherwise, Thompson v. Monteiro, 58 N.J.Super. 302, 156 A.2d 873 (Super.Ct.1959).

2. The presumption of validity of an earlier marriage is transferred to the second marriage so as to require clear and convincing evidence of the validity and continued existence of the first marriage if the later marriage is to be invalidated, Simmons v. Simmons, 35 N.J.Super. 575, 144 A.2d 577 (Super.Ct.1955).

3. When the validity of a marriage is attacked upon the ground that one of the parties to it had a husband or wife living

at the time when it was contracted, the party asserting its invalidity must not only prove the former marriage, but also that the former husband or wife was living at the time of the second marriage. See Vreeland v. Vreeland, 78 N.J.Eq. 256, 79 A. 336 (Ch.1911).

■ It appears from the record that despite the initial effect the above presumptions may have had, they were rebutted by clear and convincing evidence. The following exhibits were introduced at the hearing before the Hearing Examiner:

1. Exhibit #7 is a statement by the decedent in which he states that he was ceremonially married to one Blanche Taylor in 1928 and that this marriage was never dissolved. In addition, he states that he saw his ceremonial wife in 1957, approximately eight years after the third and last infant plaintiff in the present suit was born.

2. Exhibit #6 is another statement executed by the decedent in which he states that he was never ceremonially married to the claimant and that he merely "began living with her."[2] It is also necessary to point out that the matters contained in these two statements were not objected to by counsel for the claimant at the hearing before the Hearing Examiner. Although these exhibits contain hearsay statements made by the decedent, they were nevertheless admissible in the proceedings below.[3]

The conclusion is thus inescapable that the decedent and the claimant never effected a valid common law marriage.

## IV.

■ Assuming that the above marriage was bigamous, and hence invalid, there is the further question whether New Jersey might recognize that the illegitimate infant plaintiffs are legitimate for purposes of the state intestacy laws. Claimant insists that the infant plaintiffs are legitimate for this purpose. I have concluded that this contention is without merit. There are four statutes which relate to the question of legitimacy presented here. The first is N.J.S. § 3A:4-7, N.J.S.A., which provides as follows:

§ 3A:4-7. For the purpose of descent and distribution under this chapter to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his mother, so that he and his issue shall inherit and take from his mother and from his maternal kindred, including his maternal ancestors, descendants and collaterals; and they, from him and his issue. When parents of an illegitimate child shall marry subsequent to his birth and recognize and treat him as their child, such child shall be deemed to have been made the legitimate child of both of his parents for the purpose of descent and distribution to, through and from him under this chapter.

It also should be pointed out that if the subsequent marriage of the parents referred to in the preceding section is a void *ceremonial* marriage, the children are nonetheless legitimate. See L. v. L., 92 N.J.Super. 118, 222 A.2d 297 (Super. Ct.1966).

N.J.S. § 9:15-1, N.J.S.A., is a general legitimation statute which provides for the legitimation "by the intermarriage of * * * natural parents," along with the requirement of recognition.[4]

N.J.S. § 9:15-2, N.J.S.A., another legitimation statute, provides generally that children "born of a ceremonial mar-

2. Tr. 16.

3. Tr. 34.

4. N.J.S. § 9:15-1, N.J.S.A.: Any child heretofore or hereafter born out of wedlock shall be legitimated by the intermarriage of his natural parents and their recognition and treatment of him as their child. A child so legitimated is entitled to all rights and privileges which he would have enjoyed had he been born after the marriage, his status being the same as if he were born in lawful wedlock.

riage \* \* \*" are considered legitimate notwithstanding the subsequent declaration that such marriage is void.[5]

Finally, N.J.S. § 2A:34–20, N.J.S.A., found in the divorce and nullity statutes, provides that only a certain class of issue of void marriages are to be deemed illegitimate, that class being "where the marriage, not being a ceremonial one, is dissolved because either party had another wife or husband living at the time of a second or other marriage."[6]

The authorities referred to above make it quite clear that children born out of wedlock either prior or subsequent to a *void ceremonial marriage* are deemed legitimate for purposes of the State's intestacy law. However, neither the State Legislature nor the courts of New Jersey have extended the status of legitimacy to children who are born subsequent to a void common law marriage. Moreover, in Wieczoreck v. Folsom, 142 F.Supp. 507 (D.N.J.1956), it was held that children born subsequent to an attempted common law marriage were not entitled to children's insurance benefits under the Social Security Act—i. e., the court decided that under the law of New Jersey such children were deemed illegitimate.

 Claimant argues that even if the infant plaintiffs are illegitimate under the law of New Jersey they are entitled to benefits under the Social Security Act by virtue of the last sentence of 42 U.S.C. § 416(h) (2) (A), supra, which provides that:

"Applicants who according to such law [law of the state of domicile] would have the same status relative to taking intestate personal property as a child or parent shall be deemed such."

Claimant argues that since under N.J.S. § 9:16–2, N.J.S.A.,[7] illegitimates are entitled to support and education from their mother and father to the same extent as legitimates, they thus have the "same status relative to taking intestate personal property \* \* \*" as legitimates. For a court which has accepted this argument, see Cruz v. Celebrezze, 255 F.Supp. 665 (E.D.Wis.1966). I must disagree with the decision of that case. An illegitimate takes no intestate property under Section 9:16–2 above. The legislature has merely placed a statutory duty on parents to provide support for illegitimate children. Furthermore, this duty can only be enforced by one parent against the other, or by one having physical custody of the child, but not by the child, himself.[8] Thus, while the parents are alive, illegitimates and legitimates are entitled to the same benefits with respect to support and education. After the father dies, however, only legitimate children have a right of inheritance and are takers under the New Jersey intestate statute. The right to inherit and the right to receive support are not the same thing at all. Section 416(h) (2) (A) was apparently directed to that class of illegitimate children who for the purpose of the devolution of intestate property are deemed legitimate under the law of New Jersey.[9]

Finally, claimant relies on Hammond v. Pennsylvania R. R., 31 N.J. 244, 156 A.2d 689 (1959), and Middleton v. Luck-

---

5. N.J.S. § 9:15–2, N.J.S.A.: Any child heretofore or hereafter born of a ceremonial marriage is the legitimate child of both parents notwithstanding the marriage be thereafter annulled or declared void. Such child shall enjoy the status and rights to which he would have been entitled had he been born of a valid marriage.

6. N.J.S. § 2A:34–20, N.J.S.A.: A judgment of nullity of marriage shall not render illegitimate the issue of any marriage so dissolved, except in a case where the marriage, not being a ceremonial

one, is dissolved because either party had another wife or husband living at the time of a second or other marriage. In such a case the marriage shall be deemed void ab initio, and the issue thereof shall be illegitimate.

7. N.J.S. § 9:16–2, N.J.S.A.: A child born out of wedlock shall be entitled to support and education from its father and mother to the same extent as if born in lawful wedlock.

8. See N.J.S. § 9:16–3, N.J.S.A.

9. See notes 5–7 supra and accompanying text.

enbach S.S. Co., 70 F.2d 326 (2d Cir. 1934). In *Middleton,* the court was concerned with whether illegitimates were included within the definition of "children" under the Federal Death on the High Seas Act. The Act provides for compensation for the actual pecuniary loss suffered by beneficiaries as a result of wrongful death. Children of the decedent are included in the designated class of beneficiaries.[10] The court held that a federal definition was to be adopted which included illegitimates. The *Hammond* case was decided under the Federal Employers' Liability Act which provides a cause of action for the wrongful death of an employee. Recovery is available for the children of the decedent.[11] The court in *Hammond* decided that the definition of "children" included illegitimates as well as legitimates. It must be remembered, however, that unlike the Social Security Act, neither the Federal Death on the High Seas Act nor the Federal Employers' Liability Act requires a reference to state laws of inheritance in order to define the word "children." *Hammond* and *Middleton* are thus not in point.

For the reasons stated above, the decision of the Appeals Council is affirmed.

10. 41 Stat. 537 (1920), 46 U.S.C. § 761 et seq. (1958).

11. 35 Stat. 65 (1908), as amended, 45 U. S.C. § 51 et seq. (1958).