EDNA T. CONKLING, complainant-respondent,

*v.*

DAVID VAN RIPER CONKLING, defendant-appellant.

[Decided September 27th 1934.]

On appeal from a decree of the court of chancery advised by Advisory Master Child, who filed the following opinion:

"The complainant files her bill for maintenance alleging that on the 12th day of August, 1900, she was married to the defendant, David Van Riper Conkling, by a justice of the peace in Jersey City, New Jersey, and that thereafter on the 20th day of April, 1905, a second ceremony of marriage was performed between complainant and defendant by the Reverend A. R. Cronce, a minister, at Newark.

"There is no corroboration of the complainant's testimony as to the fact of her being married to the defendant on August 12th, 1900, at Jersey City. No certificate of such marriage was produced, nor is there any record of any ceremonial marriage having been performed between the parties on that date.

"The complainant produced an original marriage certificate certifying to her marriage to David Conkling on the 20th

of April, 1905, on which date she swears she went through a second ceremony of marriage with the defendant. There was offered and received in evidence an official record of this marriage from the city clerk of the city of Newark, certifying to the marriage of one David R. Conkling on April 20th, 1905, to Tessie Slattery, which was the maiden name of the complainant. In this record the age of the man is given as thirty-six and his parents' names are given as Matthew Conkling and Elvina Van Riper. The age given in this record was the approximate age of the defendant in the year 1905 and the names of the parents of the man as recited in this record are the correct names of the father and mother of the defendant. Under the number of marriages of the man is the record that it was his second and there is a notation that he had been previously divorced. The fact is that prior to the year 1905 the defendant was married and had been divorced.

"There is and can be no question as to the authenticity of the record of the marriage from the city clerk's office of Newark, New Jersey, and there is no question that a marriage ceremony was performed by the Reverend A. R. Cronce at Newark on April 20th, 1905, between the persons who gave the names and information contained in the city clerk's record of the marriage.

"The defendant denies ever having been ceremonially or otherwise married to the complainant, and says that he was not in Newark or in the vicinity of Newark on the date of the alleged marriage in the year 1905, but says that he was in Philadelphia, Pennsylvania, at that time in company with a man named Hogan. Hogan also testified to the same effect. The defendant testified that from Philadelphia he went with Hogan to Atlantic City, New Jersey, and from Atlantic City he went to Asbury Park in the month of May, 1905. Both the complainant and Hogan testified that while they were together in Philadelphia, Atlantic City and Asbury Park the defendant never left those cities. However, the weight to be given to the testimony of the defendant as to his whereabouts in the months of March, April and May, 1905, is impaired

by the fact that the defendant made an affidavit in this cause in the month of June, 1930, in which affidavit he swore that in April and May, 1905, he was in Newburgh, New York. The defendant explains this discrepancy between his testimony and the affidavit by saying that the dates given in the affidavit were not correct. However, in view of the long period of time that elapsed from the year 1905 until the commencement of this suit, I am inclined to believe that but little weight should be given to the testimony of the defendant as to his whereabouts in the months of March, April and May, 1905. He has no documentary evidence or any memorandum showing his whereabouts at the dates in question. I likewise feel that the testimony of the witness Hogan, while it may be true that he was in company with the defendant at the places testified, I feel that his recollection as to dates is worthy of but little weight concerning matters in which the witness Hogan had no particular interest that would cause such dates to be impressed upon his mind, so that he could remember the dates at a period of over twenty-five years after.

"The defendant admits that he had sexual relations with the complainant commencing about the year 1900, but says that such relations were not matrimonial but were illicit. These relations continued, with some interruptions, down to the month of February, 1905, at which time they ceased entirely for a number of years and then were resumed and continued down to the years 1927 and 1928.

"The complainant testified that after her alleged marriage in the year 1900 she and the defendant lived together as man and wife at various places throughout the country down to about the month of February, 1905, when they separated. She says that as the result of their cohabitation a daughter, now of full age, was born. The defendant testified that he boarded with the complainant in New York City, Bayonne, New Jersey, and in Jersey City at intervals from the year 1900 down to February, 1905; that he had intercourse with her but says that the daughter of the complainant is not his child and was five or six months old when he first saw her.

"The complainant produced relatives and other witnesses who testified that the complainant and the defendant were regarded as being married long prior to the month of February, 1905; that the defendant was introduced as the husband of the complainant. The complainant assumed and used the name of Conkling prior to the year 1905 and has since that time continued to use that name. The defendant wrote letters to the complainant addressing her as 'Mrs. Edna T. Conkling,' and continued to do so down to the year 1927 or 1928. The defendant testified that he did not remember when he first began to write to the complainant under the name of Conkling. He admits that he knew that the complainant had told her mother she was married to him. This knowledge must have come to him before the year 1905. He also admits that the complainant, before the year 1905, introduced him to acquaintances as her husband, and admits that she introduced him to her sister as her husband and that he did not object to such introduction, saying by way of explanation that he thought he was shielding her and let the introduction go unchallenged. During all of the time from 1900 down to the early part of the year 1905, he, on numerous occasions, lived in the same house with the complainant and during this period had sexual relations with her on numerous occasions. This course of conduct on the part of the defendant in my opinion, was sufficient to constitute a common law marriage when, as here, both of the parties were competent to contract marriage.

"This course of conduct also, in my judgment, constitutes corroboration of the testimony of the complainant that she had been ceremonially married to the defendant in the year 1900 at Jersey City, New Jersey.

"It is alleged that the second marriage of the complainant on April 20th, 1905, at Newark, negatives the idea that there had been a previous marriage between these parties, although the defendant denies that such second marriage ceremony took place. The explanation of this second marriage ceremony as given by the complainant is that when or shortly

after these parties separated in the month of February, 1905, the defendant stated to the complainant that their original marriage was not binding, because he, the defendant, had not obtained his final decree of divorce from his first wife when the ceremony of 1900 took place, and that the defendant stated to the complainant that they could disregard their first marriage. The complainant says that immediately upon ascertaining that there was a question as to the validity of her first marriage to the defendant, she insisted upon a second marriage ceremony being performed and that at her insistence the second marriage was performed on April 20th, 1905, at Newark.

"In the month of August, 1905, the defendant alleges that he was lawfully married to the wife that he is now living with, Viola Musgrave Conkling, at Hackettstown, New Jersey, by a justice of the peace named Gibbs. Viola Musgrave Conkling also testified that she was married at Hackettstown, New Jersey, by a justice of the peace named Gibbs in the month of August, 1905, the date or approximate date being fixed by reason of the fact that there was a farmers' picnic at Hackettstown or in the vicinity on that day. The complainant, in order to discredit the testimony of the defendant and Viola Musgrave Conkling, with whom he has lived as his wife since August, 1905, down to the present time, produced a record showing that there was no justice of the peace named Gibbs commissioned at the date of the defendant's alleged marriage to Viola Musgrave Conkling. There is no public record of this marriage, nor has the defendant or Viola Musgrave Conkling any certificate certifying to the fact of such marriage. They explained the lack of this certificate by saying that they had such a certificate but that it had been lost or mislaid.

"Thereafter, at a later hearing in this cause, the defendant changed his testimony and stated that he did not recall having testified that he had been married by a justice of the peace named Gibbs, but testified that he was married by a justice of the peace named Harley and the defendant produced a witness, William Huyler, who testified that he was

a witness to the marriage of the defendant to Viola Musgrave, and that such marriage was performed at the time of the farmers' picnic in August or September, 1905.

"It is very unusual that the parties to a marriage, if they can remember the name of the person who performed the marriage, could be mistaken in the name and it is significant that it was not until it had been demonstrated that there was no justice of the peace named Gibbs commissioned in the year 1905 that the defendant changed his testimony and produced a witness to corroborate his testimony that he had been married by a justice of the peace named Harley.

"The defendant and Viola Musgrave Conkling, after the year 1905, executed deeds of conveyance for property in Morris county, in which deeds Viola Musgrave Conkling was recited to be the wife of the defendant.

"About the year 1926, after an interval of many years, the defendant resumed his relations with the complainant, visited her at her boarding house, went on trips with her and admits that during the period from 1925 down to the year 1928 he had sexual relations with the complainant. These sexual relations he admits were continued after he had been shown the alleged record of the complainant's marriage to him in the month of April, 1905, and after she had demanded a money settlement from him for the properties that he had conveyed with Viola Musgrave Conkling. About the year 1928 a question arose as to who was the lawful wife of the defendant. The complainant then began to assert her rights and claim an interest in properties that had been conveyed; that as the result of these claims by the complainant the defendants admits that he caused deeds of conveyance to be drawn from himself and the present complainant, in which deeds the present complainant was recited to be the wife of the defendant. These deeds were executed by the complainant in the office of a lawyer named Bannister in the city of New York, to which office the complainant was taken by the defendant, and in these deeds the certificate of acknowledgment recited that the complainant was the wife of the defendant. The defendant's explanation of these deeds is that he

was fearful of exposure and scandal, and that notwithstanding the fact that the complainant was not his wife and had no legal claim upon him, he caused these deeds to be executed and alleges that he paid to the complainant a certain sum of money as consideration for the execution of these deeds.

"The circumstances of this case are most unusual and most distressing, involving the status of innocent persons. The long delay of the complainant in asserting her rights is most unusual, but the whole course of conduct of the parties to this suit has been most unusual and extraordinary. Apparently, judging by the conduct of the defendant this complainant had a most extraordinary fascination for him, for after many years and after, as he says, he had been married to another woman, the parties to this suit resumed their relationship. In the year 1905 at the time of the alleged second marriage of these parties, there was no financial reason for the complainant pretending that she was married to the defendant, for at this time he had little or no money and was not apparently in a position to support a wife and family. Notwithstanding this fact, the defendant implies that the marriage ceremony of April 20th, 1905, must have taken place between the complainant and some person who falsely represented himself to be the defendant in this cause. That such was the case is extremely improbable and it is my belief that the complainant went through this marriage ceremony with the defendant in this case and that the reason this ceremony was performed was because there was a question as to the validity of the first ceremony of marriage in 1900 between these parties.

"I, therefore, find that the complainant and the defendant were lawfully married prior to the month of August, 1905, and that the defendant has abandoned and refused to support the complainant."

*Mr. Merritt Lane,* for the appellant.

*Mr. Thomas Brunetto,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons expressed in the opinion filed by Advisory Master Child, in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—None.