NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

FANNIE DUNN, PETITIONER, v. JAMES A. O'DAY,
RESPONDENT.

Decided October 11, 1940.

For the petitioner, *Frankel & Frankel* (*Charles Frankel*
and *David Roskein,* of counsel).

For the respondent, *Homer F. James.*

\* \* \* \* \* \* \*

From the stipulations of counsel and the testimony adduced
on May 3d, June 28th, July 14 and July 31st, 1940, I find
and determine as follows:

That Ernest Dunn, the decedent, was admittedly in the
employ of the respondent, James A. O'Day, on January 14th,
1938, and while in the performance of his duties as a chauf-
fer, was driving the respondent's automobile from New
York to the respondent's home at Colts Neck, Monmouth
county, New Jersey. During this trip an accident occurred
arising out of and in the course of Dunn's employment,
which resulted in injuries to him that caused his death
on January 14th, 1938. It was testified that the decedent's
earnings at the time of his decease were $15 per week, plus
room and board.

That the sole question in controversy is the marital status
or relationship of the petitioner, Fannie Dunn, and the
deceased employe on the date of his death. The testimony in

this regard disclosed the following: On October 4th, 1921, the petitioner married one, Jesse Womack; that said Jesse Womack lived with her for about four days and deserted her; that she never heard from him again, until he was produced during the trial by the respondent. He testified that prior to his marriage to the petitioner and on December 25th, 1917, he married one, Nannie Louis Model in Virginia (as appears from *Exhibit P-1*) and that she died on January 7th, 1919 (see *Exhibit P-2*); that on March 21st, 1920, at Newark, New Jersey, he married one, Vera Adams (as shown by *Exhibit P-3*), who abandoned him, thereafter, whereupon he contracted marriage with the petitioner on October 4th, 1921. This purported marriage is evidently a bigamous one and illegal inasmuch as he testified that some two years ago Vera Adams was still living and she was pointed out to him by a friend. He further testified that without any legal dissolution of his marriage to the petitioner or to the said Vera Adams, he married again in New York (see *Exhibit P-4*), to his present wife with whom he is now living and with whom he has had several children.

I find that at the time petitioner went through a ceremony of marriage to Jesse Womack, the said Jesse Womack was already wedded to Vera Adams by virtue of the ceremonial marriage of March 31st, 1920, who was still living and undivorced from him. Consequently, the petitioner's marriage to Jesse Womack was totally void. *Tyll* v. *Keller,* 94 *N. J. Eq.* 426, 428; 120 *Atl. Rep.* 6; *Maxwell* v. *Maxwell,* 98 *N. J. Eq.* 493; 131 *Atl. Rep.* 215; *Ysern* v. *Horter,* 94 *N. J. Eq.* 135; 118 *Atl. Rep.* 774. To the same effect are the provisions of *Pamph. L.* 1902, *p.* 490, commonly known as the "Marriage act," and those of the Revision of 1937, 2:50-1.

The void marriage of the petitioner to Jesse Womack in 1921, though not annulled in a direct proceeding, constitutes no obstacle to a valid second marriage by Fannie Dunn. *Schaffer* v. *Kreslovickovo,* 88 *N. J. Eq.* 192, 194; 102 *Atl. Rep.* 246; 88 *N. J. Eq.* 523; 103 *Atl. Rep.* 913; *affirmed,* 89 *N. J. Eq.* 549; 105 *Atl. Rep.* 239; *State* v. *Allen,* 32 *N. J. L. J.* 122, and if the prior marriage is utterly void

because a spouse is already married, the subsequent marriage is valid. *Dare* v. *Dare*, 52 *N. J. Eq.* 195; 27 *Atl. Rep.* 654.

The respondent further contends that petitioner was not validly married to decedent Dunn. The petitioner testified that she was a maid in the same household where the decedent was employed as a chauffeur and that in May, 1939, they announced to the mistress of the house that they had been married and thereafter they were permitted to occupy together the room previously assigned to petitioner. Her testimony in this regard was amply corroborated by the mistress of the home, Miss Elizabeth O'Day. Friends of the couple, with whom the petitioner and decedent associated, testified that they knew them as husband and wife. Others produced on behalf of the respondent who resided in Elizabeth, New Jersey, and elsewhere, testified that they did not know them to be husband and wife. This testimony is negative at best and not decisive. It was also established that the couple occupied quarters at times in Freehold, when they were not employed; they worked and lived together as man and wife at the respondent's farm in Colts Neck, where they were also known to some as husband and wife. The insurance agent who called on them to collect the insurance premiums knew them as husband and wife.

The testimony of the respondent's sister, Miss Elizabeth O'Day, has impressed me considerably and I give it complete credence.

This evidence indicates that Fannie Dunn and Ernest Dunn were husband and wife by virtue of a common law marriage. Such marriages (prior to the enactment of *Pamph. L.* 1939, *ch.* 227, amending *R. S.* 37:1-10) have been recognized as valid in New Jersey. *Conkling* v. *Conkling*, 117 *N. J. Eq.* 218; 175 *Atl. Rep.* 132.

The two essentials of a common law marriage are capacity and mutual consent presently to become man and wife. *Goldbeck* v. *Goldbeck*, 18 *N. J. Eq.* 42. Cohabitation with matrimonial habit or repute is evidence of marriage. *Conkling* v. *Conkling, supra; Proctor* v. *Lowe*, 105 *Id.* 536, 541; 148 *Atl. Rep.* 787; *Bolmer* v. *Edsall*, 90 *N. J. Eq.* 299, 306; 106 *Atl. Rep.* 646; *Applegate* v. *Applegate*, 45 *N. J. Eq.* 116;

17 *Atl. Rep.* 293. In *Castill* v. *Hill* (1897), 55 *N. J. Eq.* 479; 40 *Atl. Rep.* 32, is found a succinct summary of the applicable law where it is held:

"The general rule, under proofs of the kind considered, is that when a man and woman constantly live together, ostensibly as man and wife, claiming to be such, and so demeaning themselves towards each other, and are received into society and are treated by their friends and relations as having and being entitled to that status, the law, in favor of morality and decency, will presume that they have been legally married. Such cohabitation and reputation are said to be matrimonial in distinction from that occasional, hidden and limited cohabitation which marks the meretricious relation."

Having had an opportunity to observe the demeanor of the witnesses as they appeared and testified and from a careful consideration of all of the testimony adduced, I find that the petitioner and decedent were husband and wife; that the petitioner was actually a part of the decedent's household at the time of his death and as such is conclusively presumed to be a total dependent. I further find that the petitioner is the widow and total dependent of her deceased husband, Ernest Dunn, and is entitled to the benefits of the Workmen's Compensation act, 34:15-13, by reason of his death resulting from an accident which arose out of and in the course of his employment with the respondent.

STEPHEN J. LORENZ,
*Deputy Commissioner.*