35 N.J. Super. 367 (1955)
114 A.2d 311
SALLY L. UNTERMANN, PLAINTIFF-APPELLANT,
v.
JOHN JOSEPH UNTERMANN AND SARAH CAYER KALTMAN, ALSO KNOWN AS SARAH CAYER UNTERMANN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 1955.
Decided May 13, 1955.
*369 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Edward R. McGlynn argued the cause for the appellant (Messrs. McGlynn, Weintraub & Stein, attorneys).
Mr. Irving Siegler argued the cause for the respondents (Messrs. Siegler & Siegler, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
Plaintiff sought a judgment declaring:
(1) that she is the sole and only legal wife of the defendant, John Joseph Untermann;
(2) that the alleged Mexican divorce obtained by Untermann in no way affects her marital status;
(3) that the subsequent purported marriage between Untermann and the defendant Sarah Cayer Kaltman (also known as Sarah Cayer Untermann) does not affect plaintiff's marital status; and
(4) that the defendant Kaltman is not the legal wife of Untermann in the State of New Jersey.
In answer to the complaint, Untermann asserted the validity of his divorce from plaintiff and charged affirmatively that a Nevada divorce decree obtained by plaintiff from her first husband was illegal, which rendered void his marriage to plaintiff.
The defendant Kaltman filed a similar answer and added a counterclaim for a declaratory judgment as to her status as wife of Untermann.
*370 The trial court held: (1) that Untermann was estopped from attacking the validity of plaintiff's Nevada divorce from her first husband; (2) since plaintiff was seeking affirmative relief by way of a declaration of her status, she had the burden of proving her marriage to Untermann and since the proof showed her divorce decree had been obtained by means of a fraudulent residence, she was barred from the relief prayed for because of unclean hands; (3) that Untermann's divorce from plaintiff is void in New Jersey for lack of jurisdiction in the Mexican court, and that the defendant Kaltman was not entitled to the aid of the court by way of a declaration of her status. Plaintiff appeals from the adverse judgment; defendants have not done so.
The tangled skein of marriages and divorces to be discussed here reflects the supermarket type of divorce legislation which exists in some of our sister states and neighboring countries.
Plaintiff was married to Harold E. Cheney on October 16, 1916 in Syracuse, N.Y. Two children were born of the marriage. They moved to Newark, N.J., in 1918 and, except for the period spent in Nevada, she has lived here ever since.
Untermann was born in Newark, N.J., and so far as the record shows has always been a resident of this State.
On April 15, 1929 plaintiff obtained a judgment of divorce from Cheney in Nevada. She neither sought nor obtained custody of their children, who were then 9 and 11 years of age. On direct examination in this action she testified that Untermann paid all of her expenses for transportation, maintenance and for the court proceedings there. They were married in Reno on the very day the divorce was granted.
On cross-examination it appeared further that previously she had sued Cheney unsuccessfully in New Jersey for divorce on the ground of extreme cruelty. Thereafter she decided to go to Nevada and seek the relief there. Untermann participated in the making of the decision; as she put it, "Mr. Untermann decided it for me." About six months prior to the departure for Reno, Untermann had purchased a home *371 for them in Maplewood, N.J., and she had furnished it. The night she left New Jersey he had a going-away dinner party in that house.
Immediately after the marriage they went on a honeymoon trip to California. Then they returned here and took up residence in the previously purchased and furnished home. They continued to live in Maplewood, N.J., she says, until August 1952; he fixes the time of his leaving as August 1950. However, they agree that for some years prior to Untermann's departure they had not been cohabiting as man and wife. No children were born of the marriage.
Untermann continued to provide support. He sent his wife $60 weekly and in addition paid medical and dental bills, and taxes and operating expenses of the home, title to which was in both their names. In fact, he was still maintaining her in this fashion at the time of this hearing.
Mrs. Untermann's first husband, Cheney, died July 14, 1945. Whether he had remarried and had children, or acquired any realty or other estate which might be affected if the Nevada divorce were invalidated does not appear.
In any event, it is undisputed that plaintiff and Untermann did not live together as man and wife after Cheney's death. They did spend a weekend together in Florida in September 1947 in an unsuccessful effort to work out a reconciliation. Mrs. Untermann claims they engaged in sexual relations on one occasion; he denies it. There is no basis for a finding of common-law marriage, even if such marriages were not proscribed at the time in New Jersey. R.S. 37:1-10. See Dacunzo v. Edgye, 33 N.J. Super. 504 (App. Div. 1955); Danes v. Smith, 30 N.J. Super. 292 (App. Div. 1954).
Late in October 1953 plaintiff was informed that Untermann had remarried on October 25, 1953 in Greenwich, Connecticut. She had no knowledge or notice of the institution of any divorce proceedings against her, nor of any judgment of divorce.
Investigation disclosed that her husband had obtained a Mexican decree of divorce on September 28, 1953, and on October 25, 1953 had married the defendant, Sarah Kaltman, *372 a resident of Pennsylvania, who had been divorced from her husband in Arkansas on August 4, 1953. This declaratory judgment action was then instituted.
It is not necessary to discuss the Mexican proceedings. The evidence shows there was no residence in that country and not even an attempt made to give plaintiff any notice. The decree is worthless, as the trial court indicated, and Untermann does not argue to the contrary on this appeal. See Tonti v. Chadwick, 1 N.J. 531 (1949).
Thus we are brought to a consideration of the efficacy of the Nevada divorce decree between plaintiff and Cheney. It is presumptively legal and regular and it is entitled to full faith and credit until shown to be invalid by someone having standing to make the showing. Cheney, the only other actual party, never attacked it. Whether he remarried on the strength of it or acquired interests that might be altered if it were to be declared void, was not developed. However, there is not the slightest evidence that he was other than an innocent party in any fraud that may have been practiced on the Nevada court.
Assuming that Untermann had standing to raise the issue, we agree with the trial court that the facts developed at the hearing estop him from doing so. Tonti v. Chadwick, supra; Judkins v. Judkins, 22 N.J. Super. 516 (Ch. Div. 1952); Margulies v. Margulies, 109 N.J. Eq. 391 (Ch. 1931). In addition to assisting in the procurement of the divorce, he married the plaintiff in reliance upon its validity. Thereafter he remained married to her for 24 years without questioning the decree, and in fact treated the marriage as subsisting by seeking the Mexican divorce.
Plaintiff raises the question as to whether Untermann has any standing to assail the Nevada judgment, he being a stranger to it. The Supreme Court has indicated that the greater weight of authority is to the effect that a person not a party to the proceeding cannot do so, at least where the judgment is or may be voidable (Shammas v. Shammas, 9 N.J. 321 (1952)), as distinguished from void. Tonti v. Chadwick, 1 N.J. 531 (1949).
*373 This principle does not interfere with the right of a spouse who is a party to the divorce proceedings to attack the foreign judgment on the ground of fraud. Nor does it in any way interfere with the right of the State to vindicate its public policy of protecting the marital status by means of criminal proceedings directed against the criminality of a remarriage, State v. Najjar, 1 N.J. Super. 208 (App. Div. 1949), affirmed 2 N.J. 208 (1949); State v. De Meo, 35 N.J. Super. 168 (App. Div. 1955), or indeed in a civil proceeding, Lea v. Lea, 18 N.J. 1, 6 (1955).
It is argued that if Untermann cannot impugn the Nevada record, the testimony received at the hearing with respect to the character of plaintiff's residence in that state cannot be considered and therefore the presumptive validity of the judgment entitles it to full faith and credit in New Jersey. But it is not necessary to decide that specific issue here.
Plaintiff herself on direct examination laid before the court the circumstances attending her residence in Nevada and her divorce action there. She was seeking a judicial declaration of her status as the lawful wife of Untermann and in effect she said: "Here are the circumstances of my divorce from Cheney and my marriage to him. Am I his lawful wife?" And even if we exclude from consideration the additional proof adduced on her cross-examination (the propriety of which exclusion would be doubtful, to say the least), and the testimony of Untermann on the same subject, which is little more than a reiteration of that which she had introduced already, the record still contains enough evidence of the type recognized by all of our cases to justify the application by the trial court of the doctrine of unclean hands to her complaint for affirmative declaration of marital status.
It is true that she is not attacking the Nevada decree. But where she seeks a declaration of status which involves the basic question of the legality of her own marriage which in turn depends upon the validity of her prior divorce, and she furnishes the facts showing inequitable conduct in the procurement of that divorce, the bar of unclean hands may be raised against her. There is no essential difference between *374 her position as a suitor seeking affirmative relief in an equity tribunal and the situation where an attack is being made on such a decree by a person who himself participated in the inequitable conduct. Tonti v. Chadwick, supra; Shepherd v. Ward, 5 N.J. 92, 111, 112 (1950); Judkins v. Judkins, 22 N.J. Super. 516, 537 (Ch. 1952); Keller v. Linsenmyer, 101 N.J. Eq. 664 (Ch. 1927); Tyll v. Keller, 94 N.J. Eq. 426 (E. & A. 1923); 2 Anderson, Declaratory Judgments (2d ed. 1951), 1456. The reason for the determination not to interpose the bar in Staedler v. Staedler, 6 N.J. 380, 393, 394 (1951), does not exist in our case.
Under the circumstances, the trial court was justified in dismissing the complaint and in declining to grant the affirmative declaration of status sought by the plaintiff.
The judgment is affirmed. We find no mistaken exercise of discretion as to the size of the counsel fee allowance.