664

Estate of Daniel Buckley, Deceased, Jeremiah T. Mahoney and James Buckley, Trustees, et al,* Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 68378, 72750, 79238. Filed January 12, 1962.

*Alfred Cerceo, Esq.*, for the petitioners in Docket Nos. 68378 and 72750.

*Albert L. Solodar, Esq.*, for the petitioner in Docket No. 79238.

*Dean P. Kimball, Esq.*, for the respondent.

Tietjens, *Judge:* The Commissioner determined income tax deficiencies as follows:

Estate of Daniel Buckley_____ 1953     $1,549.94

*Proceedings of the following petitioners are consolidated herewith : Daniel C. Buckley, Docket No. 72750 ; and Charlotte G. Buckley, Docket No. 79238.

| | 1953 | $4,118.81 |
| Daniel C. Buckley | 1954 | 1,501.69 |
| Charlotte G. Buckley | 1953 | 16,999.57 |
| | 1954 | 671.13 |

The questions presented are: (1) Whether payments received by Charlotte in 1953 and 1954 were made under a written instrument incident to divorce; (2) whether all or any part of the payments constituted interest taxable to Charlotte and deductible by Daniel; (3) whether Daniel was entitled to file a joint return with Willa R. Buckley in 1953 and 1954; (4) whether Daniel was entitled to a dependency exemption for Willa in 1953 and 1954; (5) whether Daniel was entitled to a dependency exemption for Theresa Zupa for 1953 and 1954; (6) whether Charlotte was entitled to deduct all or any part of her attorney fees and other costs incurred in collecting the payments from Daniel.

FINDINGS OF FACT.

Some of the facts have been stipulated and are incorporated herein by reference.

Petitioner Charlotte G. Buckley filed her income tax returns for 1953 and 1954 with the director of internal revenue for the Upper Manhattan District in New York.

Petitioner Daniel C. Buckley with his purported wife Willa R. Buckley filed joint returns for the years 1953 and 1954 with the director of internal revenue for the Upper Manhattan District in New York.

In 1916 Daniel Buckley, the grandfather of Daniel C. Buckley, died leaving a will dated June 14, 1913, and a codicil dated November 10, 1913, which were duly admitted to probate in the Surrogate's Court, New York County. Jeremiah T. Mahoney and James A. Buckley were the duly appointed trustees of petitioner Estate of Daniel Buckley. As such they filed a 1953 fiduciary income tax return with the director of internal revenue for the Upper Manhattan District in New York.

Charlotte and Daniel C. Buckley (hereafter sometimes referred to as Daniel) were married on May 15, 1917, in New York. Disputes and differences arose between them and on February 1, 1932, they executed a separation agreement. Under the agreement Daniel was to make payments of $3,000 per year to Charlotte at the rate of $250 per month. These payments were to be increased to $4,000 per year on the death of Daniel's mother who died in June 1932.

Daniel's payments fell into arrears and on October 26, 1939, Charlotte brought suit for such arrears in the Supreme Court of the State of New York, New York County.

While Charlotte's suit was pending, Daniel through an attorney in fact instituted a divorce proceeding against Charlotte in the Lower

Court of the Judicial District of Cuauhtemoc, Apizaco, State of Tlaxcala, Mexico. Charlotte was not apprised of the Mexican proceedings. She was not personally served. Purported service was had by a 3-day notice published in a Mexican newspaper. This method of service was employed as a result of Daniel's false representation to the Mexican court through his attorney in fact that he did not know his wife's address. A decree of divorce was issued by the Mexican court on January 3, 1940.

On May 4, 1940, a suit for divorce was brought by Daniel against Charlotte in the Superior Court of Hartford, Connecticut, which was subsequently discontinued by stipulation in May 1942.

On May 21, 1940, Charlotte obtained a judgment in the Supreme Court, New York County, against Daniel in the amount of $23,503.28 which was composed of arrearages of $20,351.64 and interest to the date of the judgment of $3,151.64. Execution on this judgment resulted in the realization of $1,894.88, leaving an unrealized balance of $21,608.40.

Daniel continued to default in his payments under the separation agreement and another suit was instituted in the Supreme Court, New York County, by Charlotte in 1946 and on October 1, 1946, a judgment in the amount of $32,957.50 was obtained by Charlotte. In this judgment $27,250 was attributable to arrearages and $5,707.50 to interest.

Daniel's principal source of income was a trust set up under the will and codicil of his grandfather, Daniel Buckley, for the benefit of him and his brother, James A. Buckley. Income from the trust in the amount of $77,979.76 was borrowed by the trust and used to amortize various mortgages on property constituting the trust res. It was adjudicated in an accounting proceedings that the estate owed $77,979.76 to Daniel and his brother James and they held an equitable lien in that amount against the estate.

In July 1949, Charlotte commenced a judgment creditor's action in the Supreme Court, New York County, against Daniel and the estate. She received a favorable decision from the court (4 Misc. 2d 550, 150 N.Y.S. 2d 330) and in October 1952 she secured a final decree which transferred to her the equitable lien of Daniel against the estate, the proceeds of which lien were to be applied in partial satisfaction of her judgments. In the proceedings the court also held that $3,000 of the annual trust income constituted surplus income, i.e., income not needed by Daniel for his support and maintenance, and that such amount should be paid in monthly installments of $250 to Charlotte in satisfaction of her judgment and in accordance with the terms of the 1932 separation agreement.

Pursuant to the court's decree, the estate paid Charlotte $31,500 and $3,000 in 1953 and 1954, respectively. When these payments were

made the estate owed Daniel in excess of $34,500 for amounts previously advanced to the principal account. These advances represented income to Daniel in prior years upon which he had paid the income taxes.

In an accounting proceeding against Jeremiah T. Mahoney and James A. Buckley as trustees of the Estate of Daniel Buckley, Charlotte submitted a schedule which shows Daniel's partial payments were applied against the judgments, as follows:

| | | | |
|---|---|---|---|
| May 21, 1940 | Judgment | $23,503.28 | |
| | Paid | 1,894.88 | $21,608.40 |
| Oct. 1, 1946 | Judgment | | 32,957.50 |
| | Balance due | | 54,565.90 |
| Dec. 23, 1946 | Payment | 3,046.23 | |
| | Less: Applied to alimony | 1,550.00 | 1,496.23 |
| | Balance | | 53,069.67 |
| Jan. 27, 1947 | Paid | 1,348.45 | |
| | Balance | | 51,721.22 |
| July 1, 1947 | Paid | 2,500.00 | |
| | Balance | | 49,221.22 |
| Sept. 16, 1947 | Paid | 2,250.00 | |
| | Less: Applied to alimony | 1,975.00 | 275.00 |
| | Balance | | 48,946.22 |
| Dec. 31, 1948 | Balance | | 48,946.22 |
| Dec. 31, 1949 | Balance | | 48,946.22 |
| Dec. 31, 1950 | Balance | | 48,946.22 |
| Dec. 31, 1951 | Balance | | 48,946.22 |
| Oct. 15, 1952 | Paid | 250.00 | |
| | Balance | | 48,696.22 |
| Nov. 15, 1952 | Paid | 250.00 | |
| | Balance | | 48,446.22 |
| Dec. 15, 1952 | Paid | 250.00 | |
| | Balance | | 48,196.22 |
| Jan. 15, 1953 | Paid | 250.00 | |
| | Balance | | 47,946.22 |
| Feb. 15, 1953 | Paid | 250.00 | |
| | Balance | | 47,696.22 |
| Mar. 15, 1953 | Paid | 10,000.00 | |
| | | 250.00 | 10,250.00 |
| | Balance | | 37,446.22 |
| Apr. 15, 1953 | Paid | 250.00 | |
| | Balance | | 37,196.22 |
| May 15, 1953 | Paid | 250.00 | |
| | Balance | | 36,946.22 |

| | | | | |
|---|---|---|---|---|
| June 15, 1953 | Paid | | $250.00 | |
| | Balance | | | $36,696.22 |
| July 15, 1953 | Paid | | 250.00 | |
| | Balance | | | 36,446.22 |
| Aug. 15, 1953 | Paid | | 250.00 | |
| | Balance | | | 36,196.22 |
| Sept. 16, 1953 | Paid | | 250.00 | |
| | Balance | | | 35,946.22 |
| Oct. 15, 1953 | Paid | | 18,000.00 | |
| | | | 250.00 | 18,250.00 |
| | Balance due on judgments | | | 17,696.22 |

For legal services between 1939 and 1953 with respect to the collection of the arrearages, Charlotte paid her attorney $19,125 in 1953. Also in connection with the collection of the arrearages Charlotte made other expenditures of $500 in 1953.

To establish her marital status for income tax purposes, Charlotte, in April 1957, brought an action for a declaratory judgment in the Supreme Court, New York County. On April 21, 1958, the Supreme Court of New York County held that the Mexican divorce decree had been fraudulently obtained and was therefore null and void (10 Misc. 2d 596, 172 N.Y.S. 2d 367).

On or about August 10, 1959, Charlotte instituted an action in the Mexican court to nullify and set aside the divorce decree as having been falsely and fraudulently obtained. Daniel was personally served in such action, but failed to file an answer. On May 3, 1961, the Lower Court of the Judicial District of Cuauhtemoc, Apizaco, State of Tlaxcala, rendered a decision in which it declared the suit brought by Daniel to be null and void *ab initio*. No appeal was taken by Daniel and after the time for taking an appeal had expired, an order was entered in the Mexican court on June 23, 1961, declaring the judgment of May 3, 1961, to be final.

Willa R. Buckley and Daniel were purportedly married in Virginia on March 23, 1940, and have lived together as husband and wife since that time. During 1953 and 1954 Willa resided in Daniel's home. She had no income and he provided her entire support.

Theresa Zupa, the mother of Willa, also resided in Daniel's home during 1953 and 1954. She had no income and he provided all her support for those years.

Daniel in his 1953 and 1954 income tax returns claimed alimony deductions of $31,500 and $3,000, respectively. The Commissioner determined that Daniel was not entitled to such alimony deductions. In addition the Commissioner determined that Daniel was not entitled to exemptions for Willa Buckley and Theresa Zupa for the years 1953 and 1954. Daniel in an amended petition alleged that if

the payments were not deductible as alimony, they were deductible as interest.

The Commissioner determined that the $31,500 and $3,000 paid to Charlotte in 1953 and 1954, respectively, constituted taxable income to her. In the statutory notice of deficiency the Commissioner stated that this position was taken to protect the Government's interests in the event that Daniel prevails in his contention that the payments are deductible by him as alimony payments. In an amendment to his answer the Commissioner stated that if the $31,500 and $3,000 are not includible in income as alimony payments, they are includible as interest. By amended petition Charlotte alleged that she was entitled to a deduction in 1953 for legal fees of $19,125 and $500 for disbursements incurred in connection with the collection of support and maintenance payments from Daniel.

In 1956 the estate filed an amended return for 1953 in which it claimed a deduction of $30,500 for amounts paid by it to Charlotte. The claim for refund included with the return was disallowed by the Commissioner.

OPINION.

Under section 22(k), I.R.C. 1939,[1] and section 71(a)(1), I.R.C. 1954,[2] a wife who has been divorced or legally separated from her husband under a decree of divorce or a decree of separate maintenance must include in her gross income any periodic payments which she receives pursuant to a legal obligation imposed upon her husband under such decree or under a written instrument incident to such divorce or separation. Correspondingly, under section 23(u), I.R.C. 1939,[3] and section 215(a), I.R.C. 1954,[4] the husband is allowed a

---

[1] (k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * *

[2] (a) GENERAL RULE.—
(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
 *  *  *  *  *  *  *
(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

[4] SEC. 215. ALIMONY, ETC., PAYMENTS.
(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

deduction for any amounts which are includible in his wife's gross income. However, if the payments are made pursuant to a voluntary separation agreement executed before August 16, 1954, they are not includible in the wife's gross income or deductible by the husband. *Smith* v. *Commissioner*, 168 F. 2d 446 (C.A. 2, 1948); *Charles L. Brown*, 7 T.C. 715 (1946); *Herman Borax*, 30 T.C. 817 (1958).

Daniel and Charlotte executed a separation agreement in 1932. In 1940 Daniel instituted divorce proceedings in a Mexican court and was granted a divorce decree by that court. As shown in the findings of fact the Mexican decree was declared null and void by a New York court in 1958. And in 1961 the Mexican court which rendered the decree held that it was fraudulently obtained and null and void *ab initio*.

Although in the instant proceedings the payments were made pursuant to a written agreement, it was not a "written instrument incident to [a] divorce or [legal] separation" as it is a well-settled rule of law that a divorce decree which is declared void under the laws of the State or country where it was rendered is void everywhere. *De Bouchel* v. *Candler*, 296 F. 482 (N.D. Ga. 1924); *Hilton* v. *Stewart*, 15 Idaho 150, 96 Pac. 579. It is also clear that no legal separation existed in this case. It follows that such payments were not includible as alimony in Charlotte's income or deductible by Daniel or the estate.

By amended petition Daniel alleged that if the payments made in 1953 and 1954 were not deductible by him as alimony, they were deductible as interest. And the Commissioner in an amendment to his answer alleged that if the amounts received by Charlotte in 1953 and 1954 were not includible in her income as alimony payments they were includible as interest.

It has been stipulated that the judgment obtained by Charlotte in 1940 included interest in the amount of $3,151.64 and that $5,707.50 of the 1946 judgment was attributable to interest.

The characterization of partial payments when both principal and interest are due was decided in New York in *Shepard* v. *City of New York*, 216 N.Y. 251, 110 N.E. 435, where the court said:

The general rule is that in the absence of an agreement providing otherwise payment upon a debt consisting of principal and interest not actually applied by the debtor or creditor is first applicable to the interest due, and then to the principal. * * * This rule applies equally whether the debt be one which expressly draws interest or a debt upon which interest is given as damages. * * *

In the case before us we find no agreement or understanding between the parties or direction by the payor as to how the partial payments were to be applied and the evidence indicates that Charlotte did not separate the judgments into the amounts which represented

arrearages and the amounts attributable to interest. Instead it appears that the partial payments were applied against the total judgments. Therefore, under New York law, the partial payments will be deemed to have been applied first against interest as both interest and principal were due. *Shepard* v. *City of New York, supra; Arkport State Bank* v. *Nutter*, 282 App. Div. 412, 122 N.Y.S. 2d 665.

Charlotte argues that even if we find that a portion of the amounts paid constitutes interest, the payments whether designated principal or interest are not taxable to her as income, citing *Buchanan* v. *United States*, 164 F. 2d 710 (C.A.D.C. 1947). In *Buchanan* the question presented for consideration was whether the taxpayer who by virtue of a separation agreement incorporated into a divorce decree was to receive interest-bearing notes, was taxable on that portion of the payments which represented interest on the notes.[5] The court in holding for the taxpayer concluded that:

> The agreement * * * was a specification of method for the performance of the husband's obligation of support. The periodical payments denominated interest were just as much a part of that specification as was the provision for a principal sum. The whole obligation was one for alimony. It cannot be held that although the principal sum was alimony, the periodical payments were interest on simple indebtedness. There being no simple indebtedness, there is no interest as such in the income tax sense.

In *John R. Buchanan*, 3 T.C. 705 (1944), this Court had occasion to consider whether the husband could deduct the interest paid on the notes and, relying on *Thomas* v. *Dierks*, 132 F. 2d 224 (C.A. 5, 1942), we held that he could deduct the interest payments. The decision of the Court of Appeals for the District of Columbia is apparently in conflict with our holding in *John R. Buchanan, supra;* however, we do not deem it necessary to reconsider our decision in *Buchanan* as we believe the instant case is distinguishable from the *Buchanan* cases.

In the case at bar Charlotte's right to interest payments arose under the judgments of the New York court and was not referable to the separation agreement as in *Buchanan*. And we think it is obvious that the interest payments here were not a "method for the performance of the husband's obligation of support." Accordingly, we hold that the portion of the payments attributable to interest is includible in the income of Charlotte and deductible by Daniel.

The next question presented is whether Daniel is entitled to file a joint return with Willa, whom he purportedly married in Virginia after the Mexican divorce decree.

A similar question was presented to this Court in *Albert Gersten*, 28 T.C. 756 (1957), affirmed on this issue 267 F. 2d 195 (C.A. 9, 1959). In that case the taxpayer's wife, Lucille, obtained a California inter-

[5] The years involved were prior to the Revenue Act of 1942 which amended section 22(k), to provide that such alimony payments would be taxable to the wife.

locutory decree of divorce from the taxpayer on April 3, 1950, which under California law did not become final until April 3, 1951. Before the year elapsed the taxpayer obtained a final decree of divorce in Mexico where he married Bernice on November 2, 1950. The taxpayer and Bernice filed a joint return for 1950. We found that the taxpayer and Bernice were not legally married and therefore were not entitled to file a joint return.

In *Gersten* we were confronted with the problem of whether the divorce decree obtained in Mexico had any force and effect in California since it was obtained through assumed residence. After a review of the law of California which was the domicile of the parties we concluded that the Mexican marriage was prohibited by the California statute and void from the beginning. However such a problem does not exist in the instant case as the Mexican court which granted the divorce decree subsequently declared it was fraudulently procured and void *ab initio* which renders it void everywhere. *De Bouchel* v. *Candler, supra.* Inasmuch as the Mexican decree was void, Daniel and Willa could not have contracted a legal marriage under the laws of Virginia which require that the parties must be "divorced from the bond of [any] former marriage." Secs. 20–41, 20–42, 20–43, Va. Code Ann. (1950).[6] See also *Corvin* v. *Commonwealth*, 131 Va. 649, 108 S.E. 651, where it was held that a husband who remarried after having obtained a fraudulent divorce from his first wife was guilty of the crime of bigamy.

Assuming *arguendo* that under the laws of Virginia the marriage was valid, under the laws of New York which was the domicile of Daniel and Willa it was a nullity. N.Y. Dom. Rel. Law sec. 6.[7] See

---

[6] Sec. 20–41. Person marrying when former husband or wife is living.—If any person, being married, shall, during the life of the former husband or wife, marry another person in this State, or if the marriage with such other person take place out of the State, shall thereafter cohabit with such other person in this State, he or she shall be confined in the penitentiary not less than three nor more than eight years.

Sec. 20–42. Exceptions to preceding section.—The preceding section shall not extend to a person whose former husband or wife shall have been continuously absent from such person for seven years next before marriage of such person to another, and shall not have been known by such person to be living within that time; nor to a person who can show that the second marriage was contracted in good faith under a reasonable belief that the former consort was dead; nor to a person who shall, at the time of the subsequent marriage, have been divorced from the bond of the former marriage, although the term at which the decree for divorce was entered had not ended; nor to a person whose former marriage was void.

Sec. 20–43. Bigamous marriages void without decree.—All marriages which are prohibited by law on account of either of the parties having a former wife or husband then living shall be absolutely void, without any decree of divorce, or other legal process.

[7] SEC. 6. VOID MARRIAGES

A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either:

1. Such former marriage has been annulled or has been dissolved for a cause other than the adultery of such person; provided, that if such former marriage has been dissolved for the cause of the adultery of such person, he or she may marry again in the cases provided for in section eight of this chapter and such subsequent marriage shall be valid;

*In Re Shuff's Estate*, 151 Misc. 754, 272 N.Y.S. 418, where the husband instituted Mexican divorce proceedings in which no process was served on the wife. Shortly after the Mexican decree became absolute the husband contracted a marriage in New Jersey. The court held the New Jersey marriage "absolutely void." Accordingly, we hold that Daniel and Willa were not legally married in 1953 and 1954 and sustain the Commissioner's determination that they were not entitled to file a joint return for those years.

An additional consideration is whether Daniel for the years at issue was entitled to a dependency exemption for Willa. It has been stipulated that from the time of their purported marriage in Virginia, Daniel and Willa have lived together as husband and wife and during the years in question she resided at Daniel's home and he provided her entire support. However, we have found that Daniel and Willa were not legally married in New York, and as we said in *Leon Turnipseed*, 27 T.C. 758, 760 (1957), "Congress never intended * * * to permit a dependency exemption for an individual whom the taxpayer is maintaining in an illicit relationship * * *." Similarly section 152(b)(5), I.R.C. 1954, states that "An individual is not a member of the taxpayer's household if at any time during the taxable year of the taxpayer the relationship between such individual and the taxpayer is in violation of local law."

For the years 1953 and 1954 Daniel also claimed a dependency exemption for Willa's mother, Theresa Zupa, which the Commissioner disallowed. The Commissioner now concedes that Daniel is entitled to a dependency exemption for 1954. However, with respect to 1953 Daniel is not entitled to a dependency exemption as Daniel and Willa were not legally married in that year and therefore Theresa neither qualifies as a mother-in-law nor comes within any of the other categories of dependents set out in section 25(b)(3), I.R.C. 1939.[8]

---

[8] (3) DEFINITION OF DEPENDENT.—As used in this chapter the term "dependent" means any of the following persons over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer:

    (A) a son or daughter of the taxpayer, or a descendant of either,
    (B) a stepson or stepdaughter of the taxpayer,
    (C) a brother, sister, stepbrother, or stepsister of the taxpayer,
    (D) the father or mother of the taxpayer, or an ancestor of either,
    (E) a stepfather or stepmother of the taxpayer,
    (F) a son or daughter of a brother or sister of the taxpayer,
    (G) a brother or sister of the father or mother of the taxpayer,
    (H) a son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, or sister-in-law of the taxpayer.

As used in this paragraph, the terms "brother" and "sister" include a brother or sister by the half-blood. For the purposes of determining whether any of the foregoing relationships exist, a legally adopted child of a person shall be considered a child of such person by blood. The term "dependent" does not include any individual who is a citizen or subject of a foreign country unless such individual is a resident of the United States or of a country contiguous to the United States. A payment to a wife which is includible under section 22(k) or section 171 in the gross income of such wife shall not be considered a payment by her husband for the support of any dependent.

The remaining issue of whether Charlotte is entitled to deduct all or any part of the attorney fees and costs incurred in connection with the collection of payments from Daniel is disposed of by the Commissioner's concession that if any part of the payments received by Charlotte is taxable to her such expenditures may be deducted in the proportion that the taxable income received by her from these sources during the period 1940 to 1953 bears to the total income received from such sources during the same period. *Elsie B. Gale*, 13 T.C. 661 (1949), affirmed on other grounds 191 F. 2d 79 (C.A. 2, 1951); *Mary Tighe*, 33 T.C. 557 (1959).

*Decisions will be entered under Rule 50.*