JOHN J. UNTERMANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89381.    Filed April 20, 1962.

*John J. Untermann*, pro se.
*William F. Fallon, Esq.*, for the respondent.

#### OPINION.

BLACK, *Judge:* The Commissioner determined income tax deficiencies as follows:

| Year | Deficiency |
| --- | --- |
| 1956 | $515.22 |
| 1957 | 512.53 |
| 1958 | 378.34 |

The question presented is whether petitioner is entitled to file a joint income tax return with Sarah Cayer Untermann, also known as Sarah Cayer Kaltman, and claim her as an exemption.

Respondent's motion to dismiss the case for lack of jurisdiction insofar as it relates to Sarah C. Untermann was granted and John J. Untermann remains as the sole petitioner.

The facts have been fully stipulated by the parties and are so found.    In part, these facts are as set forth in the following opinions of the Courts of New Jersey: *Untermann* v. *Untermann*, 35 N.J. Super. 367, 114 A. 2d 311 (App. Div. 1955); *Untermann* v. *Untermann*, 19 N.J. 507, 117 A. 2d 599 (1955); *Untermann* v. *Untermann*, 43 N.J. Super. 106, 127 A. 2d 903 (App. Div. 1956).    Only such facts

as seem necessary to an understanding of the issues will be stated herein.

Petitioner resides in the city of East Orange, Essex County, New Jersey. The returns for the years here involved were filed with the district director of internal revenue at Newark, New Jersey.

Sally Cheney obtained a divorce *a vinculo* from Harold Cheney in Nevada on April 15, 1929. Process for the divorce proceeding was by substituted service and Harold Cheney was personally served in New Jersey. Petitioner married Sally immediately thereafter in Nevada. Petitioner and Sally returned to New Jersey, took up residence and lived together for a number of years. They separated prior to the death of Harold Cheney and they did not live together thereafter.

Petitioner obtained a decree of divorce from Sally in Juarez, Mexico, on September 28, 1953. In October 1953, petitioner went through a marriage ceremony with Sarah Cayer Kaltman in Connecticut. Petitioner and Sarah returned to New Jersey, took up residence, and have lived together in New Jersey up to the present time.

Sally, upon learning of the Mexican decree, instituted a suit against petitioner and Sarah in New Jersey seeking a declaratory judgment to establish her status as the legal wife of petitioner and to declare petitioner's Mexican divorce invalid. In answer to the complaint, petitioner affirmatively charged that Sally's Nevada divorce decree was illegal which rendered void his marriage to her. Defendant Sarah added a counterclaim for a declaratory judgment to establish her status as petitioner's legal wife. Sally's complaint was dismissed after appeals up to the Supreme Court of New Jersey. It was determined, however, that petitioner's Mexican divorce was worthless and invalid. Furthermore, the Supreme Court of New Jersey held that petitioner was estopped to contest the validity of the Nevada divorce because of his participation in its procurement and his reliance on the decree. Sally's complaint was dismissed under the doctrine of unclean hands because of her fraudulent conduct in securing the Nevada divorce from Cheney. Her Nevada divorce was not invalidated although the court questioned its validity on the grounds that she was never domiciled in Nevada. It was also found that there was no evidence to sustain a common law marriage of Sally and petitioner since her first husband died after Sally and petitioner had separated. Sarah's counterclaim was dismissed without comment.

In a subsequent separate maintenance action Sally, after an appeal to the Superior Court of New Jersey, obtained an order that petitioner pay her maintenance and support. The Superior Court ruled that a maintenance action seeks to maintain the marital relation and that the policies of the law which induced the courts to disfavor

her prior suit would not be applicable. On remand the trial court entered a final judgment dated January 24, 1958, which in material part reads as follows:

it now appears to the court that the plaintiff and defendant were lawfully married on the 15th day of April, 1929 and that the defendant without justifiable cause abandoned the plaintiff and has separated himself from her and refuses and neglects to maintain and provide for her, * * *

Petitioner filed joint income tax returns with Sarah for the taxable years 1956, 1957, and 1958 wherein he claimed a $600 exemption for her in each year.

The Commissioner has determined that petitioner was not legally married to Sarah for the taxable years involved and accordingly that he was not entitled to file a joint return with her or claim her as an exemption.[1] Petitioner contends that he was legally married to Sarah because the courts of New Jersey have refused to find Sally to be his legal wife and that his ceremonial marriage to Sarah, never having been set aside, is controlling on the Tax Court.

Both parties agree that the marital status of the petitioner is governed by State law. We have previously held that marriage, its existence and dissolution, is particularly within the province of the States, *Marriner S. Eccles*, 19 T.C. 1049 (1953), affd. 208 F. 2d 796 (C.A. 4, 1953), and *Kenneth T. Sullivan*, 29 T.C. 71 (1957), affd. 256 F. 2d 664 (C.A. 4, 1958), and there is no dispute as to the applicability of New Jersey law to the present case.

It is also well settled that the respondent has not only the right but the duty of determining whether a man and woman who file a joint return are, in fact, legally married and entitled to file such a return, *Albert Gersten*, 28 T.C. 756 (1957), reversed on other grounds 267 F. 2d 195 (C.A. 9, 1959).

Our first question, therefore, is whether petitioner and Sarah were legally married under the laws of the State of New Jersey. This question in turn hinges on whether or not petitioner and Sally were still legally married and it is this issue which has been extensively litigated by Sally, Sarah, and petitioner in the courts of New Jersey. Under both the laws of New Jersey and Connecticut, if petitioner's marriage to Sally is valid and subsisting then his subsequent marriage to Sarah in Connecticut is totally void.[2] After a careful ex-

---

[1] Internal Revenue Code of 1954.
SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.
(a) JOINT RETURNS.—A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, * * *
SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS.
(b) TAXPAYER AND SPOUSE.—An exemption of $600 for the taxpayer; and an additional exemption of $600 for the spouse of the taxpayer if a separate return is made by the taxpayer, and if the spouse, for the calendar year in which the taxable year of the taxpayer begins, has no gross income and is not the dependent of another taxpayer.
[2] *Dunn* v. *O'Day*, 18 N.J. Misc. 679, 16 A. 2d 195 (1940); N.J.S.A. sec 2A:34–1; and Conn. Gen. Stat. Rev. sec. 46–28.

amination of the New Jersey court opinions with reference to the status of petitioner's and Sally's marriage, we are convinced that New Jersey recognizes the validity of that marriage. We do not believe, however, that recognition of Sally's and petitioner's marriage rested upon the proposition that the courts of New Jersey had to accept the validity of her Nevada divorce from Cheney under the full faith and credit clause of the Constitution of the United States as respondent contends. The Supreme Court of New Jersey aptly demonstrated that it has the right and the power to determine if Nevada had proper jurisdiction for the divorce action, *Williams* v. *North Carolina*, 325 U.S. 226 (1945). While the courts of New Jersey refused to invalidate the Nevada decree they did so for reasons of public policy and not because they did not have the right.

The decisions do, however, indicate that petitioner's and Sally's marriage was recognized. Sally could not have successfully maintained her action for separate maintenance unless she established a relationship of husband and wife between petitioner and herself. This pronouncement is specifically set forth in the New Jersey Superior Court's opinion rendered on the appeal in the separate maintenance action and we are controlled by that court's interpretation of State law. Secondly, while it is true that Sally was denied affirmative relief in her action for a declaratory judgment, it is equally clear that petitioner's Mexican divorce was found to be worthless and that he was estopped to contest the validity of Sally's Nevada divorce. By applying the doctrine of estoppel to petitioner, New Jersey followed the weight of authority that holds that the validity of a divorce is not open to indiscriminate attack.[3] In effect, New Jersey found that petitioner, because of his improper conduct, could not attack the Nevada divorce decree and that decree was voidable as distinguished from void, cf. *Shammas* v. *Shammas*, 9 N.J. 321, 88 A. 2d 204 (1952).

Since petitioner was estopped from attacking Sally's Nevada divorce decree in court proceedings in his State of domicile, and since that State found his Mexican divorce from her invalid; and because of the other factors discussed above, we find that under the laws of New Jersey his marriage to Sally is still in effect. Consequently, under the laws of New Jersey petitioner and Sarah were not legally married and we sustain the Commissioner's determination that they were not entitled to file a joint return for the years 1956, 1957, and 1958, *Estate of Daniel Buckley*, 37 T.C. 664 (1962).

In the assignment of error petitioner alleges that he is entitled to the exemption claimed for Sarah under the provisions of section 152 of the 1954 Code. This allegation apparently seeks to establish

---

[3] Restatement, Conflict of Laws, sec. 112, comment c, p. 110 (1948 Supp.).

an exemption for Sarah as a dependent and not as his wife.[4]  Section 152 is devoted to the definition of a "dependent" as that term is used in section 151(e).  The exemptions for a "spouse" are separately dealt with in section 151(b), (c), and (d).  Section 152 makes no mention of a "wife" or "spouse."[5]  Sarah was clearly not a dependent under section 152 since the record discloses that petitioner and Sarah were living together in violation of the law, *Leon Turnipseed*, 27 T.C. 758 (1957).

*Decision will be entered for the respondent.*

---

[4] SEC. 152. DEPENDENT DEFINED.

(a) GENERAL DEFINITION.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) as received from the taxpayer):

(9) An individual (other than an individual who at any time during the taxable year was the spouse, determined without regard to section 153, of the taxpayer) who, for the taxable year of the taxpayer, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household, &ast; &ast; &ast;

(b) RULES RELATING TO GENERAL DEFINITION.—For purposes of this section—

(5) An individual is not a member of the taxpayer's household if at any time during the taxable year of the taxpayer the relationship between such individual and the taxpayer is in violation of local law.

[5] *Dewsbury* v. *United States*, 137 Ct. Cl. 1, 146 F. Supp. 467 (1956).

